*556
 
 Vast Voorhis, J.
 

 This action was brought for an injunction and damages against appellants on the theory of unfair competition. The complaint asks to restrain them from engaging in the same business as plaintiff, from soliciting its customers, and for an accounting and damages. The individual appellants were in plaintiff’s employ for about three years before they severed their relationships and organized the corporate appellant through which they have been operating. The theory of the complaint is that plaintiff’s enterprise “ was unique, personal and confidential ”, and that appellants cannot engage in business at all without breach of the confidential relationship in which they learned its trade secrets, including the names and individual needs and tastes of its customers.
 

 The nature of the enterprise is house and home cleaning by contract with individual householders. Its “ unique ” quality consists in superseding the drudgery of ordinary house cleaning by mass production methods. The house cleaning is performed by a crew of men who descend upon a home at stated intervals of time, and do the work in a hurry after the manner of an assembly line in a factory. They have been instructed by the housewife but work without her supervision. The householder is supplied with liability insurance, the secrets of the home are kept inviolate, the tastes of the customer are served and each team of workmen is selected as suited to the home to which it is sent. The complaint says that the customer relationship is “ impregnated ” with a “personal and confidential aspect ’ ’.
 

 The complaint was dismissed at Special Term on the ground that the individual appellants were^uTt subjected to negative covenants under any contract with plaintiff and that the methods and techniques used by plaintiff in conducting its business are not confidential or secret as in the case of a scientific
 
 *557
 
 formula; that house cleaning and housekeeping “ are old and necessary chores which accompany orderly living ’ ’ and that no violation of duty was involved in soliciting plaintiff’s customers by appellants after resigning from plaintiff’s employ. The contacts and acquaintances with customers were held not to have been the result of a confidential relationship between plaintiff and defendants or the result of the disclosure of secret or confidential material.
 

 By a divided vote the Appellate Division reversed, but on a somewhat different ground, namely, that while in plaintiff’s employ, appellants conspired to terminate their employment, form a business of their own in competition with plaintiff and solicit plaintiff’s customers for their business. The overt acts under this conspiracy were found by the Appellate Division to have been that, in pursuance of this plan, they formed the corporate appellant and bought equipment and supplies for their operations — not on plaintiff’s time — but during off hours, before they had severed their relations as employees of plaintiff. The Appellate Division concluded that
 
 “
 
 it is our opinion that their agreement and encouragement to each other to carry out the course of conduct thus planned by them, and their consummation of the plan, particularly their termination of employment virtually en masse, were inimical to, and violative of, the obligations owed by them to appellant as its employees; and that therefore appellant was entitled to relief. (Cf.
 
 Duane Jones Co.
 
 v.
 
 Burke,
 
 306 N. Y. 172.)”
 

 The
 
 Duane Jones
 
 case involved unusual facts. There the defendants appropriated overnight upwards of 50% of the business of their previous employer, and 90% of its skilled employees as well as a majority of the entire working force. There the findings were in favor of the plaintiff in the trial court, whereas in this case the findings of the trial court were in favor of defendants, and those of its findings which remain untouched by the Appellate Division stand in favor of defendants. The dominating purpose in the
 
 Duane Jones
 
 case was to damage and paralyze the plaintiff corporation to enable the defendants to seize it or force a sale to them on their own terms. There the employees were all executives, whereas in this simpler organization (although Newbery is called a key man) \the formation and supervision of teams for house cleaning was not complicated and could be done by othe^stj Moreover in
 
 Ducme Jones
 
 there had been solicitation of the customers of
 
 *558
 
 plaintiff while the defendants were still employed; there was an attempt to panic and break the morale of the employees, again with the over-all purpose of paralyzing the plaintiff in order to seize it. Here, although these three employees and their wives left at the same time, there was no abrupt departure of most of the key men and nothing in reference to the interruption or paralysis of plaintiff’s business. In fact, at the time of the trial, Mrs. Rossmoore testified that they had 280 customers and 8 crews, which were 40 more customers and 1 more crew than at the time when appellants departed.
 

 Although the Appellate Division implied more relief than we consider to have been warranted, we think thaVthe trial court erred in dismissing the complaint altogether. \T]ie only trade secret which could be involved in this business is plaintiff’s list of customers?} Concerning that, even where a solicitor of business does not operate fraudulently under the banner of his former employer, he still may not solicit the latter’s customers who are not openly engaged in business in advertised locations or whose availability as patrons cannot readily be ascertained but ‘ ‘ whose trade and patronage have been secured by years of business effort and advertising, and the expenditure of time and money, constituting a part of the good-will of a business which enterprise and foresight have built up ”
 
 (Witkop & Holmes Co.
 
 v.
 
 Boyce,
 
 61 Misc. 126, 131, affd. 131 App. Div. 922, followed in
 
 People’s Coat, Apron & Towel Supply Co.
 
 v.
 
 Light,
 
 171 App. Div. 671, 673, affd. 224 N. Y. 727). In the latter case it was pointed out by the Appellate Division that although there was no evidence that the former employee had a written customers list,
 
 “
 
 There was in his head what was equivalent. They were on routes, in streets and at numbers revealed to Mm through his service with plaintiff. Their faces were familiar o him, and their identity known because of such employment.” That case was not overruled by
 
 Scott & Co.
 
 v.
 
 Scott
 
 (186 App. Div. 518, 525), as is clear from the opinion by Justice Callahau in
 
 Kleinfeld
 
 v.
 
 Roburn Agencies
 
 (270 App. Div. 509, 511), where it is said: AA. distinction is made in the cases between a former employee soliciting customers of his former employer who are openly engaged in business in advertised locations and his soliciting unadvertised customers who became known to the employee only because of information obtained during his employment?!
 
 (People’s Coat, Apron & Towel Supply Co.
 
 v.
 
 *559
 

 Light,
 
 171 App. Div. 671, affd. 224 N. Y. 727;
 
 Scott & Co., Inc.,
 
 v.
 
 Scott,
 
 186 App. Div. 518.)”
 

 That case points the way toward the solution of this lawsuit. Nothing to the contrary was held in
 
 Boosing
 
 v.
 
 Dorman
 
 (148 App. Div. 824) or
 
 Peerless Pattern Co.
 
 v.
 
 Pictorial Review Co.
 
 (147 App. Div. 715).
 
 Boosing
 
 distinguishes
 
 Withop
 
 by stating (p. 826) that it there appeared that the plaintiff had obtained a customers list, the names of which “ could only be secured by the expenditure of a large amount of time, effort and money in gathering together such a vast list of consumers who desired to do business in this peculiar way. These customers were not classified as likely customers in any public directory. They were not discoverable by any public display of their willingness to deal on the trading-stamp basis. They were not congregated together in any well-known place where thousands of people gathered daily to purchase supplies.”
 

 The testimony in the instant record shows that (the customers of plaintiff were not and could not be obtained merely by looking up their names in the telephone or city directory or by going to any advertised locations, but had to be screened from among many other housewives}who did not wish services such as respondent and appellants were equipped to render, but preferred to do their own housework. In most instances housewives do their own house cleaning. The only appeal which plaintiff could have was to those whose cleaning had been done by servants regularly or occasionally employed, except in the still rarer instances where the housewife was on the verge of abandoning doing her own work by hiring some outside agency. In the beginning, prospective customers of plaintiff were discovered by Dorothy Eossmoore, wife of plaintiff’s president, by telephoning at random in “ sections of Nassau that we thought would be interested in this type of cleaning, and from that we got directories, town directories, and we marked the streets that we had passed down, and I personally called, right down the list ”. In other words, after selecting a neighborhood which they felt was fertile for their kind of business, they would telephone to all of the residents of a street in the hope of discovering likely prospects. On the first day Mrs. Eossmoore called 52 homes. If she enlisted their interest, an appointment would be made for a personal call in order to sell them the service. At the end of the first year, only 40 to 50 customers had thus been
 
 *560
 
 secured. [Two hundred to three hundred telephone calls netted 8 to 12 customers. Moreover, during the first year it was not possible to know how much to charge these customers with accuracy, inasmuch as the cleaning requirements of each differed from the others, so that special prices had to be set. In the beginning the customer usually suggested the price which was paid until some kind of cost accounting could demonstrate whether it should be raised or lowered. These costs were entered on cards for every customer, and this represented an accumulated body of experience of considerable value. After three years of operation, and by August, 1952, when the individual appellants resigned their employment by plaintiff, the number of customers amounted to about 240. By that time plaintiff had 7 or 8 crews doing this cleaning work, consisting of 3 men each.
 

 Although appellants did not solicit plaintiff’s customers until they were out of plaintiff’s employ, nevertheless plaintiff’s customers were the only ones they did solicit”) Appellants solicited 20 or 25 of plaintiff’s customers who refused to do business with appellants and about 13 more of plaintiff’s customers who transferred their patronage to appellants. These were all the people that appellants’ firm solicited. It would be different if these customers had been equally available to appellants and respondent, but, as has been related, Ojíese customers had been screened by respondent at considerable effort and expense, without which their receptivity and willingness to do business with this kind of a service organization could not be knowml So there appears to be no question that plaintiff is entitled to enjoin defendants from further solicitation of its customers, or that some profits or damage should be paid to plaintiff by reason of these customers whom they enticed away.
 

 For more than this appellants are not liable. The order and opinion of the Appellate Division do not express the particular relief to which plaintiff was deemed to be entitled. The nature and extent of the injunction and of the accounting or damages were not passed upon but were remitted to Special Term. The order and memorandum of decision do state that judgment is “ directed to be entered in favor of Appellant Inasmuch as the complaint asks that appellants be enjoined, severally and jointly, from engaging directly or indirectly in the'business of house and home cleaning in any manner, shape or form adopted
 
 *561
 
 by the plaintiff, it is necessary for us to point out that plaintiff is not entitled to that much relief. The business of plaintiff has not been found to be unique either by Special Term or the Appellate Division and the evidence demonstrates that it is not so. trade secrets are involve^] as has been stated, except the customers list. The theory on which the Appellate Division implied that such relief should be granted is that of
 
 Duane Jones Co.
 
 v.
 
 Burke (supra).
 
 The alleged similarity to the
 
 Duane Jones
 
 case stems from the circumstance that appellant Percy Newbery was second in command of plaintiff’s business under president Howard Rossmoore, that he had worked there for three years during which time he had been assigned important duties by Rossmoore; that in June, 1952 (about three years after plaintiff went into business), appellants Newbery, Colagrande, Sordini, and their wives conferred about starting a new competing business after Rossmoore had declined to increase their remuneration or to give them greater security in the business (it does not appear how much their wages were except that the two who were highest paid received about $1,700 during half a year); that while still on plaintiff’s payroll but outside of business hours, they met upon a number of occasions to plan the organization of a company of their own, and purchased some equipment for that purpose (Sordini was to buy a truck, Newbery to get supplies and Colagrande to buy a vacuum cleaner, and someone was to get a waxing machine for their projected operations). The appellant corporation was organized August 19, 1952; Newbery quit on August 29, 1952, and the others, including their wives, at about the same time. They went to work on the night shift at Fairchild Engineering Company at Farmingdale, Long Island, after leaving plaintiff, and started operating their small personal service corporation during the daytime. That forms an insufficient basis on which to invoke the relief that was granted in
 
 Duane Jones Co.
 
 v.
 
 Burke
 
 (306 N. Y. 172,
 
 supra).
 

 It would have been courteous of appellants to have given Rossmoore advance notice that they were going to leave plaintiff’s employ and engage in a competing business, but their employment was at will, which legally required no notice to be given, and rendered the employments terminable at any time at the option of either party. Plaintiff is entitled to enjoin appellants from soliciting its former customers, and to recover
 
 *562
 
 such, damages or loss of profits as may be established to have resulted from those that have been solicited to date. Further than that the complaint is dismissed.
 

 The order appealed from should be affirmed, without costs, and the case remitted to the Special Term under the order of the Appellate Division for proceedings not inconsistent with this opinion. The question certified should be answered in the affirmative.
 

 Chief Judge Conway and Judges Desmond, Dye, Fuld, Froessel and Burke concur.
 

 Order affirmed, etc.