**JAD CORP. OF AMERICA et al.,**
**Plaintiffs,**

v.

**HICO CORPORATION OF AMERICA**
**et al., Defendants.**

**70 Civ. 4233.**

United States District Court,
S. D. New York.

July 28, 1971.

Eisenman, Allsopp & Strack, Mineola, N. Y., for plaintiffs.

Albert Levine, Jamaica, N. Y., for defendants.

## OPINION

MOTLEY, District Judge.

This is a motion for a preliminary injunction, pursuant to Fed.R.Civ.P. 65(a), on behalf of plaintiff Joseph A. Dussich and three corporations, each of which he owns and controls as sole stockholder. The complaint in the action sets forth various violations of the antitrust and patent laws by the defendants. Plaintiff and his companies are in the business of installing waste compactors. These are machines which compact raw refuse prior to collection by sanitation men. In addition, plaintiff invented and sells a refuse container (hereinafter called the "multiple bag") which is used with compacting machines. This multiple bag, which is the subject of plaintiff's patent, is formed of flexible polyethylene tubing and extends from the discharge port of compacting machines. The multiple bag is structured so as to allow for the continuous operation of a compacting machine without the need to constantly change individual refuse bags. After the multiple bag is filled, it is divided into separate smaller bags which are suitable for sanitation pickup. ,

Defendant Hico Corporation of America (hereinafter "Hico") engages in the manufacture and installation of compacting machines and sells multiple bags for use therein. Defendant Click Industrial Automation, Inc. (hereinafter "Click") manufactures multiple bags which are then sold to Hico. Defendant Greenwald, the former head salesman for plaintiff's companies, is now employed by defendant Hico.

Plaintiffs seek to enjoin the defendants from 1) infringing their patent No. 3,521,675 by the manufacture, use, or sale of the multiple bags claimed in the patent and from manufacturing or selling compactors designed to use such containers, 2) combining and agreeing to eliminate competition in the sale of multiple bags and compactors, and 3) enjoining defendant Greenwald from soliciting customers of his former employer.

While it is clear that defendants are infringing plaintiffs' patent (Defs' Affidavit in Opposition, at 12), defendants set forth three defenses to the infringement. These defenses are: 1) that plaintiffs' patent is invalid under 35 U. S.C. § 103 because the invention would have been obvious to a person having ordinary skill in the art, 2) that plaintiffs attempt to obtain rights in their patent to a waste compactor system, which admittedly was unpatented, prevents plaintiffs from obtaining rights in their invention; and 3) laches. The defenses to

the antitrust causes of action are: 1) that plaintiffs, themselves, entered into agreements with defendants that were in restraint of trade and are, thus, barred from recovery, and 2) that defendants have not acted in restraint of trade and that plaintiffs' allegations in that respect are untrue. As to defendant Greenwald's solicitation of his former employers' (plaintiffs') customers, defendants assert 1) that this is not illegal, and 2) that Greenwald did not make copies of the plaintiffs' customer lists and any solicitations are based on his own knowledge of the customers.

After a review of the lengthy affidavits and briefs the court has concluded that the motion for a preliminary injunction should be denied. To summarize that which will be dealt with in greater detail below, the court has found 1) that plaintiffs' patent is not "beyond question valid," 2) that plaintiffs have not shown probable success on the merits of the antitrust causes of action, because there are many disputed issues of fact, and 3) that plaintiffs have failed to prove irreparable harm.

*Findings of Fact*
*and*
*Conclusions of Law*

I. First, the court will consider the question of whether the plaintiffs are entitled to a preliminary injunction against defendants' alleged infringement of the patent. The burden imposed on a patentee seeking a preliminary injunction against infringement is substantially heavier than the usual ones of showing irreparable injury and probability of success on the merits. Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp., 443 F.2d 867 (2d Cir. 1971). A patentee must demonstrate that the "patent is beyond question valid." Simson Bros. v. Blancard & Co., 22 F.2d 498, 499 (2d Cir. 1927) (L. Hand, J.), cited with approval in Carter-Wallace v. Davis-Edwards Pharmacal Corp., *supra.*

Defendants claim that the patent is invalid on the ground that the subject matter of the patent fails to meet the non-obviousness test of 35 U.S.C. § 103. Upon an examination of the patent and the prior art, much of which was not cited by the Patent Office, the court finds that it cannot properly regard the patent as "valid beyond question."

The question for the court under § 103 is whether the subject matter sought to be patented would be non-obvious to a hypothetical mechanic having ordinary skill in the art at the time of the invention. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). While the question is one of law, the court must make a factual inquiry into the prior art and determine whether the invention was obvious. Graham v. John Deere Co., *supra.*

Plaintiffs' multiple bag invention is a container formed of flexible polyethylene tubing. As described and illustrated in his United States Patent No. 3,521,675 (Exhibit C, attached to Motion for a Preliminary Injunction), the circumferential walls of the container are axially gathered in successive folds and axially spaced clamping means, e. g., staples, secure one or more of these folds against axial extension such that alternate sections of the container are secured and unsecured respectively against such extension. The container is mounted upon the discharge port of almost any conventional compacting apparatus and is continuously filled as the compacting apparatus functions. At a convenient time, the tube is separated and sealed by building personnel into individual packages of appropriate size for handling by the Sanitation Department. See Affidavit of Dussich attached to motion papers.

According to the patent the Dussich container has axially spaced clamping means each securing at least one of the successive folds against axial extension such that alternate portions of the container are secured and unsecured respectively against axial extension. (Dussich claims 1 to 5 at col. 5.) Also, the Dussich container comprises axially spaced

means securing preselected alternate portions of an axially compressible and expandable wall against expansion. (Dussich claims 6 to 11 at Col. 6.)

Defendants rely primarily on three prior patents, not cited by the examiner, to show that the Dussich arrangement would be obvious to anyone ordinarily skilled in the art. These three patents concern packaging machines for foodstuffs, such as sausages, where it is conventional to extrude the sausage meat into casings which are subsequently tied off at prearranged intervals. The Dussich patent does mention foodstuffing machines in its discussion of the prior art, but not, as stated earlier, the three machines cited by defendants.

The first of these patents is U.S. Patent No. 3,324,621 issued to Runge on June 13, 1967 (hereinafter "Runge"). Runge discloses that its

"general object . . . [is] . . . to provide a packaging machine . . which feeds the material to be packaged through a hollow tubular mandrel to a continuous tube of relatively thin pliable material, which divides the tube at predetermined space intervals by gathering the tube material and forming therein a constricted area, which forms and applies axially spaced closure forming metal clips within the constricted area to form the top of one package and the bottom of the next succeeding package, and which severs the constricted portion of the tube between the closure forming clips to separate the successively formed packages." (Runge Patent Col. 1, lines 15–26; see also *id.*, Col. 1, lines 28–40; *id.*, Col. 1, lines 60 to Col. 2, line 9.)

The arrangement in the Runge patent is almost identical to that later patented by Dussich. Both patents involve the continuous feeding of material into a similar casing that can be tied off to make separate packages. While Runge uses pairs of plates to secure the axial portions of the tube (*id.*, Col. 2, lines 41–53), and Dussich uses clamping means (Dussich claims 1 to 5) this

change does not constitute invention, since, in the court's view, such a substitution would be obvious to any one ordinarily skilled in the art.

The second patent relied on as prior art is United States Patent No. 3,382,641 issued to Jensen on May 14, 1968. This patent discloses a machine for making a container similar to that of Dussich's. A tube of relatively thin material is continuously fed through a hollow mandrel and the filled tube is divided at predetermined spaced intervals by gathering the tube material and forming a constricted area within which axially spaced seal formations are applied. The constricted portion of the tube is severed between the seal formations to provide separate successively formed packages. (Jensen, Col. 1, lines 40–50.)

The third prior art machine, similar to the two described above, is the subject of U.S. Patent No. 2,831,302 issued April 22, 1958. The patent, again, describes a container similar to Dussich's. (Patent No. 2,831,302, Col. 1, lines 24–35.)

Dussich's patent states that meat packaging machines, similar to those described above, can be distinguished because "the automatic tie-off operation must be synchronized with the extrusion process in order to permit continuous functioning." (Dussich Patent, Col. 2, lines 4–6.) The court finds this distinction unimpressive. In fact, the distinction indicates that the meat packaging machines are more sophisticated than the Dussich invention. The Dussich container must be separated manually while this is done automatically in the meat packaging machines.

■■■ In this case, secondary considerations such as the commercial success of the Dussich multiple bag and the long felt need for such a bag are not enough to overcome the obvious nature of the Dussich invention in light of the prior art. *Graham v. John Deere Co., supra.* Additionally, the failure of the Patent Office to cite some of the prior art weakens the prima facie validity of the

patent. Formal Fashions, Inc. v. Braiman Bows, Inc., 369 F.2d 536, 539 (2d Cir. 1966). In light of the above, there has been a failure to show to the court that plaintiffs' patent is "beyond question valid."

II. As to the antitrust causes of action and the cause of action involving Greenwald's alleged solicitation of plaintiffs' customers, the court finds that plaintiffs have failed to show both a probability of success on the merits and irreparable harm.

First, plaintiffs assert that defendant Hico is selling multiple bag containers at a loss and is doing so as an inducement to purchase Hico's compacting equipment. (Affidavit of Dussich, at 18.) If this statement were uncontroverted plaintiffs might be entitled to relief. United States v. Loew's, Inc., 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962); Maryland Baking Co. v. F. T. C., 243 F.2d 716 (4th Cir. 1957). However, defendants flatly deny these allegations. Defendant states that it is not competing with plaintiffs' selling of multiple bags in the open market and defendant "denies the prices and quotations made by Dussich concerning the cost and/or sale price of the multiple bag." (Affidavit of La Morte, at 14.)

■ Second, plaintiffs assert that defendant Greenwald "utilized the information contained on the customer list taken from plaintiff Joseph A. Dee, Inc., to contact customers and prepare bids for contracts." (Affidavit of Dussich, at 14; see also id. at 11, 12.) Defendant Greenwald denies that he uses the customer list of his former employer and states in his affidavit that "[t]here was no need for your deponent [Greenwald] to have a list made of the names of the customers since all such information emanated from your deponent by reason of his personal and continuous calls to prospective apartment house owners . . ." (Affidavit of Greenwald, at 5.) If, as defendant asserts, he is soliciting customers on the basis of his own knowledge and not on the basis of a purloined customer list, the defendant is not necessarily acting unlawfully. Town and Country House & Home Service, Inc. v. Newberry, 3 N.Y.2d 554, 170 N. Y.S.2d 328, 147 N.E.2d 724 (1958).

Additionally, there are numerous other factual disputes and issues that only a trial or hearing can resolve. For example: 1) Plaintiff claims that he gave confidential information to defendants regarding his invention while defendants deny that this information was given in confidence; 2) Plaintiffs also claim that defendants are deliberately misrepresenting plaintiffs' invention as their own while defendants claim plaintiffs are misrepresenting the scope of their patent; and, 3) There are three contracts entered into between plaintiffs and defendants which cannot be properly interpreted without a development of the circumstances existing at the time of the making of the contracts.

■ Standing alone, the above disputed issues of material facts are enough to deny plaintiffs the preliminary injunction. Fed.R.Civ.P. 65(b), and 52(a). As the Court of Appeals stated in Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp., *supra*, ". . . where there are disputed issues of fact . . . a temporary injunction should not issue on the basis of affidavits save in instances of extreme urgency." *Id.* at 2834 n. 5. No such extreme urgency has been shown in the instant case.

In fact, it is the court's view that plaintiffs have failed to show the irreparable harm necessary for the issuance of a preliminary injunction. Although plaintiffs may be losing business because of the defendants' actions, that type of loss is easily calculable and remedied by damages. Defendants are not bankrupt and appear to be a company able to respond in damages if plaintiffs prevail at trial.

For the foregoing reasons plaintiffs' motion for a preliminary injunction is denied.

So ordered.