OPINION OF THE COURT
Harold Tompkins, J.
This action was commenced to recover an executive placement commission of $9,000 earned by defendants. Plaintiff The Fisher Organization, Inc. (Fisher), and defendant Ryan Redden & McGrath, Inc. (RRM), are engaged in executive placement. The individual defendants were formerly employed by plaintiff as placement counselors. They formed the corporate defendant RRM while still in plaintiff’s employ. It is alleged that while employed by Fisher the individual defendants appropriated confidential information which resulted in the placement of a candidate. RRM earned a $9,000 commission for the placement and Fisher seeks return of the commission it alleges was wrongfully obtained by RRM.
From August 1,1977 until December 15,1981 defendant Dennis Ryan was employed as a placement counselor by plaintiff. Plaintiff terminated his employment on Decern *306 ber 15, 1981. Defendants Mary Redden and Laura McGrath were also employed by plaintiff as employment counselors until December 28, 1981 when they resigned and joined with Ryan to form RRM. The certificate of incorporation for RRM was filed on November 17, 1981 at which time all three individual defendants were employed by Fisher.
Plaintiff contends that while the individual defendants were in its employ, they learned of a potential candidate for placement named Sean Cronin. Cronin was not placed by plaintiff. It is alleged that he was contacted by defendants and thereafter placed by them with an employer that they attempted to place him with when they were employed by Fisher.
Fisher argues that the appropriation of Cronin’s name violated the fiduciary obligation the individual defendants owed to plaintiff. It is alleged that Cronin’s name was a protectible trade secret and plaintiff seeks to recover the fee realized by defendants as a result of this alleged wrongful conduct.
Defendants counter that Cronin’s name was independently ascertainable through established recruiting procedures and therefore is not entitled to trade secret protection.
Employees may not utilize information obtained through their confidential employment relationship with the employer to the detriment of their employer where the information was obtained by the employer through years of business effort and advertising (Town & Country House & Home Serv. v Newbery, 3 NY2d 554, 558). This fiduciary duty survives termination of the employment relationship. (Town & Country House & Home Serv. v Newbery, supra, p 560.) Where the information was compiled by the employer only after a considerable effort and expense over a period of time it becomes a valuable asset of the business and is protected as a trade secret (Leo Silfen, Inc. v Cream, 29 NY2d 387, 392).
Generally necessary for trade secret protection is a finding that the information appropriated from the employer was not readily available through public sources (Leo Silfen, Inc. v Cream, supra, p 392).
*307 In Leo Silfen, Inc. v Cream (supra), plaintiffs were engaged in selling building maintenance supplies to industrial and commercial users. Defendant Cream, after his discharge from plaintiff’s employ, formed a company engaging in the same business as plaintiff. About three months thereafter plaintiff brought an action to enjoin Cream from soliciting any of plaintiff’s customers. The court held that although Cream had solicited his former employer’s customers the customers were openly engaged in business in advertised locations, their names and addresses being readily available to those engaged in this trade, and therefore did not constitute protectible trade secrets. (Leo Silfen, Inc. v Cream, supra, p 393.) The court stated that where customers are readily ascertainable outside the employer’s business as prospective users or consumers of the employer’s services or products trade secret protection will not attach and courts will not enjoin the employee from soliciting the employer’s customers. (Leo Silfen, Inc. v Cream, supra, p 392.)
Where customers are not known in the trade or are discoverable only by extraordinary efforts customer lists and files are protected as trade secrets (Town & Country House & Home Serv. v Newbery, 3 NY2d 554, 559, supra).
In the Town & Country case the plaintiff was engaged in the business of house and home cleaning for individual householders. Defendants left its employ and set up a competing company and solicited 38 of plaintiff’s 240 customers. The court found that the “customers [were] screened by respondent at considerable effort and expense, without which their receptivity and willingness to do business with this kind of a service organization could not be known” (3 NY2d, at p 560). Based upon this finding the court afforded the customers’ identities trade secret protection.
The names of candidates for executive placement have also been afforded trade secret protection by courts. (Fortune Personnel Agency v Livingston, 102 Misc 2d 369.) There the court stated (p 370): “While the plaintiff’s agency is not the only one in which these applicants for employment have filed their resumés, the fact is that the names, addresses, accomplishments and resumés of such *308 people are not readily compiled from publicly available sources and must be regarded as trade secrets or confidential information”, citing Town & Country House & Home Serv. v Newbery (3 NY2d 554, supra). A preliminary injunction was granted enjoining the utilization in any way of the identities and career information of job applicants procured from the plaintiff. (Fortune Personnel Agency v Livingston, 102 Misc 2d 369, 371, supra.)
Here the testimony indicated, and indeed defendants concede, that they became aware of Cronin’s name and his interest in being placed while in plaintiff’s employ. Defendant Redden attempted to place Cronin with Heublein while she was employed by plaintiff. The eventual placement of Cronin occurred just one week after Redden and McGrath resigned from Fisher. Just two days after resigning from Fisher defendant Redden on behalf of RRM contacted Cronin to inform him of their new company and in response to this call Cronin forwarded his resumé which in turn was forwarded to Heublein, the company that eventually hired him.
Defendants have alleged that Cronin’s name cannot be afforded trade secret protection because he was readily ascertainable through use of standard executive search directories and the telephoning of personnel offices at large companies. The key word in the context of this case is “readily”. Although Cronin’s name may have been available through standard executive search practices, the telephoning, screening and evaluation of candidates is not a task that can be completed in a short period of time. Thus, a candidate’s name cannot be termed “readily available”. The candidates are trade secrets and an employer is entitled to relief when these trade secrets are wrongfully utilized by a former employee. (Fortune Personnel Agency v Livingston, 102 Misc 2d 369, supra; Ability Search v Lawton, 80 Civ 0915 [SONY]; Hunt Personnel v Gratele, 77 Civ 3665 [SDNY]; Holiday Temps v Wendlinger, NYLJ, May 27, 1982, p 7, col 2.)
Even if Cronin’s name was available through public sources it is highly unlikely that defendants, if they hadn’t known of Cronin, would have discovered him and matched him with the Heublein opening in such a short period of *309 time. Redden had twice forwarded Cronin’s resumé to Heublein while employed by Fisher, and Cronin was interviewed once by Heublein as a result of the efforts undertaken by Redden while she was employed by plaintiff.
The court finds that the individual defendants violated their fiduciary duty to plaintiff by utilizing the CroninHeublein prior contacts to their own benefit. Defendants used for their own benefit the considerable effort expended to match Cronin with Heublein. Fisher is therefore entitled to relief.
While plaintiffs will generally seek a remedy in equity to enjoin a defendant from using customer lists or other trade secrets, courts have permitted actions, such as the one before this court, where money damages are sought (Spiselman v Rabinowitz, 270 App Div 548; Leo Silfen, Inc. v Cream, 29 NY2d 387, 392, supra). Here, plaintiff seeks, and is entitled to, the commission obtained by defendants.
Accordingly, plaintiff is awarded judgment in the amount of $9,000 plus interest from January 4, 1982, said figure representing the fee wrongfully obtained by defendants. (Spiselman v Rabinowitz, 270 App Div 548, supra; Leo Silfen, Inc. v Cream, 29 NY2d 387, supra.)