FIFTH DIVISION

December 3, 2004

No. 1-03-2369

SHAWN D.G. MACKIE,

Plaintiff-Appellant,

v.

VAUGHAN CHAPTER-PARALYZED VETERANS OF AMERICA, INC., an Illinois Not-For-Profit Corporation,

Defendant-Appellee.

))))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

Barbara J. Disko,

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

This is an appeal from a dismissal in the circuit court of Cook County pursuant to section 2-615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615 (West 2000)).  At issue is whether Shawn Mackie, a former employee of the Vaughan Chapter of the Paralyzed Veterans of America, Inc. (the Vaughan Chapter), has stated a cause of action for retaliatory discharge by alleging he was terminated after reporting what he believed was the theft of chapter property when a member of the chapter’s board of directors downloaded the organization’s mailing lists for use by a private business.  Because we conclude that Mackie has alleged sufficient facts to state a cause of action for retaliatory discharge, we reverse and remand this case to the trial court for further proceedings.

BACKGROUND

 The following facts are taken from Mackie’s complaint.  Mackie was hired by the Vaughan Chapter as a government relations director in January 2000.  In September 2000, Mackie discovered what he believed to be the use of the chapter’s mailing list for private purposes.  Mackie suspected that Maurice Valerino, a member of the chapter’s board of directors, downloaded mailing lists from the chapter’s computers for use by Cybermeds, Inc., his medical equipment sales business, and also for use by his wife’s chiropractic practice.  Mackie alleged that he complained to Gustave Horn, president of the Vaughan Chapter, and to other board members about this use of the mailing list, and Horn told him to “[p]lay ball or be left in the dust.”  

In December 2000, a Vaughan Chapter member complained to Mackie about receiving unsolicited mailings from the businesses operated by Valerino and Valerino’s wife.  Believing that this complaint confirmed his suspicions, Mackie continued to object to this use of the Vaughan Chapter’s resources.  In March 2001, Mackie and a coworker filed a complaint with the veteran’s association police department, but the department refused to investigate, stating that this was an internal matter to be resolved by the chapter.  After Mackie filed the complaint, he was suspended, and he and his coworker were subsequently terminated.  

Mackie alleged that before the mailing list incident, he met the reasonable performance expectations of his superiors.  After reporting the alleged misconduct, Mackie began receiving complaints about his performance.  Mackie was moved from his office into a general administration area, his access to the Vaughan Chapter’s computers was limited, and his work was subject to heightened scrutiny.  

Mackie filed a retaliatory discharge action in the circuit court of Cook County.  The Vaughan Chapter moved to dismiss the complaint under section 2-615 of the Code, arguing that Mackie failed to state a cause of action for retaliatory discharge.  The circuit court agreed and dismissed Mackie’s complaint with prejudice.  Mackie appeals, contending he has stated sufficient facts to assert a retaliatory discharge claim under the “citizen crime-fighter” theory recognized by Illinois courts.  

STATING A CLAIM FOR RETALIATORY DISCHARGE

1. General Principles

The tort of retaliatory discharge is an exception to the general rule that an “at-will” employee can be terminated at any time with or without cause.  
Palmateer v. International Harvester Co.
, 85 Ill. 2d 124, 128, 421 N.E.2d 876, 881 (1981); 
Belline v. K-Mart Corp.
, 940 F.2d 184, 186 (7th 
Cir. 1991).  This tort balances the respective competing interests of employers and employees in efficient business operations and in earning a living.  
Belline
, 940 F.2d at 186.  Courts have recognized a limited and narrow cause of action for retaliatory discharge.  
Fellhauer
 
v. City of Geneva
, 142 Ill. 2d 495, 505, 568 N.E.2d 870, 875 (1991). 

To state a claim for retaliatory discharge, an employee must allege that: (1) he or she was discharged; (2) in retaliation for the employee’s activities; and (3) the discharge was in contravention of a clearly mandated public policy.  
Palmateer
, 85 Ill. 2d at 134, 421 N.E.2d at 881; 
Fellhauer
, 142 Ill. 2d at 505, 568 N.E.2d at 875.  Although no precise definition of public policy exists, the supreme court stated in 
Palmateer 
that “public policy concerns what is right and just and what affects the citizens of the State collectively.”  
Palmateer
, 85 Ill. 2d at 130, 421 N.E.2d at 878.   Further, the matter “must strike at the heart of a citizen’s social rights, duties, and responsibilities before the tort will be allowed.” 
Palmateer
, 85 Ill. 2d at 130, 421 N.E.2d at 878-79.  Retaliatory discharge cases are generally allowed when an employee is discharged for: (1) filing a worker’s compensation claim; or (2) reporting illegal or improper conduct.  
Lambert v. City of Lake Forest
, 186 Ill. App. 3d 937, 941-42, 542 N.E.2d 1216, 1219 (1989)
.  Employees’ refusal to work in conditions that are hazardous and those that violate standards set by Congress have given rise to retaliatory discharge claims.  See 
Kelsay v. Motorola, Inc
., 74 Ill. 2d 172, 185, 384 N.E.2d 353, 358 (1978); 
Wheeler v. Caterpillar Tractor Co.
, 108 Ill. 2d 502, 510, 485 N.E.2d 372, 377 (1985).  

More specifically, retaliatory discharge claims have emerged under two theories: (1) a “clear mandate” action, alleging that the complained-of conduct contravenes a clearly mandated public policy, but not necessarily a law; and (2) a “citizen crime-fighter” theory.  
Stebbings v. University of Chicago
, 312 Ill. App. 3d 360, 369, 726 N.E.2d 1136, 1143 (2000).  Citizen crime-fighter cases usually involve an employee terminated for “whistle-blowing” or telling of a coworker’s commission of an alleged crime; however, the crime does not have to be work-related.  See 
Belline
, 940 F.2d at 187; 
Vorpagel v. Maxell Corp. of America
, 333 Ill. App. 3d 51, 56, 775 N.E.2d 658, 662 (2002).  

2. Illinois Cases

The tort of retaliatory discharge in this state emerged in 1978 with the supreme court’s decision in 
Kelsay
, where 
the plaintiff was terminated in retaliation for filing a worker’s compensation claim.  
Kelsay
, 74 Ill. 2d at 179, 384 N.E.2d at 356.  The court reasoned that worker’s compensation law provided efficient and expeditious remedies for injured employees, and threatening to terminate an employee for filing such a claim seriously undermines this scheme.  
Kelsay
, 74 Ill. 2d at 181-82, 384 N.E.2d at 357.  

The supreme court further defined the retaliatory discharge cause of action in 
Palmateer
, in which the plaintiff 
claimed he was discharged after 16 years of employment for supplying information to law enforcement authorities that a company employee might be involved in criminal activities.  
Palmateer
, 85 Ill. 2d at 127, 421 N.E.2d at 877.  The supreme court held that the complaint was improperly dismissed and found that the plaintiff was fired in violation of an established public policy that favors citizen crime-fighters.   
Palmateer
, 85 Ill. 2d at 132, 421 N.E.2d at 879.  The court stated: “There is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens.”  
Palmateer
, 85 Ill. 2d at 132, 421 N.E.2d at 879.  The actual crime that the plaintiff alleged was never mentioned in 
Palmateer
, and, in response to the employer’s argument that the suspected crime could be a minor offense, the supreme court stated that the magnitude of the alleged offense was not an issue, reasoning that the Illinois legislature has decided that even “the theft of a $2 screwdriver” is a problem resolved by the criminal justice system.  
Palmateer
, 85 Ill. 2d at 133, 421 N.E.2d at 880.  

The Illinois Supreme Court also recognized a retaliatory discharge cause of action in 
Wheeler
, where t
he plaintiff alleged he was discharged in retaliation for refusing to handle radioactive material as part of his job duties and where the defendant operated in violation of Nuclear Regulatory Commission rules.  
Wheeler
, 108 Ill. 2d at 505, 485 N.E.2d at 374.  In finding that the plaintiff stated a cause of action, the supreme court held that “[t]he protection of the lives and property of citizens from the hazards of radioactive material is as important and fundamental as protecting them from crimes of violence.”  
Wheeler
, 108 Ill. 2d at 511, 485 N.E.2d at 377.  Further, the supreme court found that Congress had effectively declared a clearly mandated public policy in the legislation that the plaintiff had cited.  
Wheeler
, 108 Ill. 2d at 511, 485 N.E.2d at 377. 

In contrast to those cases, our supreme court has not recognized causes of action for retaliatory discharge in 
Fellhauer
, 142 Ill. 2d at 510, 568 N.E.2d at 877 (no public policy violation existed where plaintiff sued town mayor because state municipal code allowed mayor to remove any officer that he appointed;
 
therefore, allowing plaintiff’s claim would frustrate mayor’s discretionary authority over appointments), 
Gould v. Campbell’s Ambulance Service, Inc.
, 111 Ill. 2d 54, 58, 488 N.E.2d 993, 995 (1986) (relevant statutory provisions and ordinance failed to show the existence of a clearly mandated public policy), or 
Barr v. Kelso-Burnett Co.
, 106 Ill. 2d 520, 527, 478 N.E.2d 1354, 1357 (1985) (no public policy violation existed because United States Constitution does not provide protection against private individuals or corporations who abridge free expression of others).
(footnote: 1) 

For its part, the Illinois Appellate Court has recognized retaliatory discharge claims under the citizen crime-fighter test when a plaintiff has a reasonable belief that a law or federal statute is being violated.
  In 
Stebbings
, the plaintiff discovered, while performing a study for the University of Chicago, that the study participants were being exposed to a much higher level of radiation than had been approved and that the United States Department of Energy had issued a stop-work order.  
Stebbings
, 312 Ill. App. 3d at 363, 726 N.E.2d at 1139.  The plaintiff was fired after insisting that the radiation exposure be reported to the institution that funded the project, since the University was required by law to “file an assurance that it would do certain things.”  
Stebbings
, 312 Ill. App. 3d at 371, 726 N.E.2d at 1144.  The trial court dismissed the plaintiff’s complaint pursuant to section 2-615.  
Stebbings
, 312 Ill. App. 3d at 364, 726 N.E.2d at 1139.  On appeal, this court found that the plaintiff stated a cause of action for retaliatory discharge under the citizen crime-fighter model.  
Stebbings
, 312 Ill. App. 3d at 371, 726 N.E.2d at 1144.  The plaintiff believed in good faith that the University was violating the law by not complying with federal filing requirements.  
Stebbings
, 312 Ill. App. 3d at 371, 726 N.E.2d at 1144.  Further, the court reasoned that the fact that the reported conduct did not constitute a criminal act did not diminish the plaintiff’s claim, stating that the tort of retaliatory discharge applies not only where criminal statutes are violated but also where federal regulations are breached.  
Stebbings
, 312 Ill. App. 3d at 372, 726 N.E.2d at 1145. 

Similarly, 
Johnson v. World Color Press, Inc.
, 147 Ill. App. 3d 746, 754, 498 N.E.2d 575, 580 (1986), recognized a cause of action for retaliatory discharge where the plaintiff objected to company accounting practices that he believed violated federal securities laws.  The court reviewed the law and the requirement of truthful reporting to the government and found that public policy favors “disclosure, truthfulness and accuracy in the financial reports made by businesses to the government and to the public.”  
Johnson
, 147 Ill. App. 3d at 750, 498 N.E.2d at 578.  An employee who reasonably believes that his employer is violating these policies should be protected when he voices an objection.  
Johnson
, 147 Ill. App. 3d at 750, 498 N.E.2d at 578. 

Likewise, in 
Petrik v. Monarch Printing Corp
, 111 Ill. App. 3d 502, 509, 444 N.E.2d 588, 593 (1982)
, the appellate court found that the plaintiff stated facts sufficient to survive a motion to dismiss when he was discharged for researching a financial discrepancy that he believed may have been due to criminal conduct.  The plaintiff noticed a discrepancy in the company’s financial records and reported it to the president and chief executive officer, who told him to pursue an investigation.  
Petrik
, 111 Ill. App. 3d at 503, 444 N.E.2d at 589.  The plaintiff warned the president that the discrepancy might violate Illinois’ criminal laws, and the plaintiff was discharged in retaliation for his efforts to uncover the possible embezzlement of corporate funds.  
Petrik
, 111 Ill. App. 3d at 504, 444 N.E.2d at 589.  The company argued that because the plaintiff did not notify public authorities but rather voiced his opinions to company officials, the matter was an internal dispute, thus rendering 
Palmateer’s 
holding inapplicable.  
Petrik
, 111 Ill. App. 3d at 507, 444 N.E.2d at 592.  The appellate court disagreed, holding that this was “something more than an ordinary internal dispute,” and stating that the public policy considerations underlying 
Palmateer
, such as enforcing the Criminal Code and protecting citizen crime-fighters,
 
supported the plaintiff’s conduct.  
Petrik
, 111 Ill. App. 3d at 508, 444 N.E.2d at 592. 

In contrast to those cases
, no such public policy or illegal or improper criminal conduct was found
 where a plaintiff reported to his employer, the City of Lake Forest, that a coworker committed suicide due to job-related pressures.  
Lambert
, 186 Ill. App. 3d at 945, 542 N.E.2d at 1221.  The appellate court rejected the plaintiff’s retaliatory discharge claim because even though the complaint stated a cause of action, the facts adduced at trial did not support the allegations.  
Lambert
, 186 Ill. App. 3d at 944, 542 N.E.2d at 1221.  After the suicide, the deceased employee’s widow sued the city
, and the plaintiff’s supervisors told the plaintiff and other workers not to talk to the widow or her attorney.  
Lambert
, 186 Ill. App. 3d at 939, 542 N.E.2d at 1217.  The plaintiff again told a supervisor that he believed the suicide was work-related.  
Lambert
, 186 Ill. App. 3d at 939, 542 N.E.2d at 1217.  The plaintiff’s next job performance evaluations concluded that his performance did not meet expectations, and on two occasions, the city offered the plaintiff money to resign, but the plaintiff refused.  
Lambert
, 186 Ill. App. 3d at 939-40, 542 N.E.2d at 1217-18.  The plaintiff believed that his supervisors were asking him to commit perjury; however, the court found this was an internal city investigation and stated that withholding the truth here “[did] not affect anyone other than the City.”  
Lambert
, 186 Ill. App. 3d at 945, 542 N.E.2d at 1221.  The court also did not find that the plaintiff was exposing illegal or improper conduct.  
Lambert
, 186 Ill. App. 3d at 945, 542 N.E.2d at 1221.  The court held that this action did not concern any clearly mandated public policy and that only the city was affected, as opposed to the citizens of the State collectively.  
Lambert
, 186 Ill. App. 3d at 945, 542 N.E.2d at 1221.  T
he court reversed a judgment awarding the plaintiff more than $98,000 in damages for retaliatory discharge.  
Lambert
, 186 Ill. App. 3d at 938, 542 N.E.2d at 1217.  See also 
Doherty v. Kahn, 
289 Ill. App. 3d 544, 551-52, 682 N.E.2d 163, 169 (1997) (plaintiff failed to state a cause of action for retaliatory discharge when plaintiff alleged conspiracy because public policies surrounding covenants not to compete and unfair competition do not affect overall welfare of citizens; only contractual relationship between employer and employee was affected). 

3. Federal Cases Applying Illinois Law

Two federal cases interpreting Illinois law have recognized causes of action for retaliatory discharge when the plaintiffs alleged that their employers committed acts that were either illegal or improper and the plaintiffs were terminated after reporting that conduct.  See 
Belline
, 940 F.2d at 185; 
Tanzer v. The Art Institute of Chicago
, No. 02-C-8115 (N.D. Ill. 2003).  In 
Belline
, the Seventh Circuit Court of Appeals held that an employee alleged sufficient facts to state a retaliatory discharge claim when the employee believed that theft occurred when a manager had authorized her to give merchandise to a local Rotary club and the manager never entered payment for the goods.  
Belline
, 940 F.2d at 185.  The defendant corporation argued that the manager’s activities may not have been illegal, given the company’s policy of donating goods to charitable organizations.  
Belline
, 940 F.2d at 188.  However,
 the court of appeals stated that the claim should not depend on the chance of whether the actions were criminal; rather, public policy favors the reporting of activity that is apparently
 
criminal.  “That the questionable conduct may later prove to be authorized and therefore legitimate is not dispositive.” 
 
Belline
, 940 F.2d at 188.   In 
Tanzer
, slip op. at 9, the United States District Court for the Northern District of Illinois, Eastern Division, held that the plaintiff’s allegations were sufficient to survive a motion to dismiss.  The plaintiff, an employee of the Art Institute of Chicago, alleged in her complaint that her employer committed some type of fraud when she was told to remove names from a donation wall because they were inconsistent with the employer’s “one name, one gift” policy.  
Tanzer
, slip op. at 2.  This occurred after the plaintiff’s supervisors approved the design and the donating family had given money on the condition that the wall would include the names of all family members.  
Tanzer
, slip op. at 2.  If family members asked about the absence of their names, the plaintiff was instructed to respond that the names “just fell off” of the wall.  
Tanzer
, slip op. at 2-3.  
The federal district court framed the issue as whether the plaintiff reasonably thought the Art Institute’s acts were illegal or improper, not whether the acts actually were illegal or improper, and the court concluded that the plaintiff reasonably could have believed that her employer would be committing some type of fraud if she followed her supervisor’s orders.  
Tanzer
, slip op. at 8-9.  The court clarified that in denying the Art Institute’s motion to dismiss, it was not determining that the Institute’s actions constituted fraud; rather, the court concluded that given those facts, it was possible that the plaintiff believed that fraud occurred.  
Tanzer
, slip op. at 8
.

ANALYSIS

When the legal sufficiency of a complaint is challenged by a motion to dismiss under section 2-615, the court takes as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff; the court must then determine whether these allegations are sufficient to establish a cause of action upon which relief can be granted.  
Stroger v. Regional Transportation Authority
, 201 Ill. 2d 508, 516, 778 N.E.2d 683, 688 (2002).  
A dismissal is appropriate only where no set of facts would entitle the plaintiff to recover.
  Wheeler
, 108 Ill. 2d at 505-06, 485 N.E.2d at 374.  

The Vaughan Chapter contends that the courts in 
Knox College v. Celotex Corp
., 88 Ill. 2d 407, 422, 430 N.E.2d 976, 983 (1981),
 
and in 
Doherty, 
289 Ill. App. 3d at 551-52, 682 N.E.2d at 169, exercised an abuse of discretion standard, stating that a trial court’s granting of a motion to dismiss would not be reversed absent an abuse of that discretion.  However, the chapter stops short of arguing that an abuse of discretion standard applies here, acknowledging that 
Stebbings
 applied a 
de novo 
standard of review
.  Indeed, our supreme court has held that this court’s review of a dismissal under section 2-615 is 
de novo
.  
Wallace v. Smyth, 
203 Ill. 2d 441, 447, 786 N.E.2d 980, 984 (2002); 
Stroger
, 201 Ill. 2d at 516, 778 N.E.2d at 688.  We therefore observe the 
de novo 
standard of review.  

Again, to state a retaliatory discharge claim, an employee must allege that: (1) he or she was discharged; (2) in retaliation for the employee’s activities; and (3) the discharge was in contravention of a clearly mandated public policy.  
Palmateer
, 85 Ill. 2d at 134, 421 N.E.2d at 881.  The parties agree that the first two elements are present.  The Vaughan Chapter argues that under the third prong, Mackie’s claim lacks an important public policy argument.  The chapter asserts that the Illinois Supreme Court has recognized the narrow scope of retaliatory discharge actions and that Mackie’s claim represents an unwarranted expansion of the tort.   

In summarizing the tort of retaliatory discharge, the 
Stebbings 
court noted that 
Palmateer 
expanded retaliatory discharge actions to whistle-blowers who were reporting conduct that was either illegal or improper.  
Stebbings
, 312 Ill. App. 3d at 366, 726 N.E.2d at 1140.  
Stebbings
 described two layers of law that apply to a citizen crime-fighter case.  
Stebbings
, 312 Ill. App. 3d at 370-71, 726 N.E.2d at 1144.  First, statutes, constitutional provisions or case law must mandate a public policy of reporting crime; the 
Stebbings
 court notes, however, that since 
Palmateer
, “there is little question that such a policy has been clearly mandated and so this layer of law will rarely be at issue” in a citizen crime-fighter suit.  
Stebbings
, 312 Ill. App. 3d at 370-71, 726 N.E.2d at 1144.  Second, a law must prohibit the conduct that the employee reported or refused to engage in, and the employee must have a good-faith belief that the law prohibits the conduct in question. 
 
Stebbings
, 312 Ill. App. 3d at 371, 726 N.E.2d at 1144.  A plaintiff need only have a good-faith belief that the defendant was violating the law; the plaintiff need not conclusively show that the law was broken or the regulations in question were violated.  
Stebbings
, 312 Ill. App. 3d at 371, 726 N.E.2d at 1144.

Federal courts have elaborated on this portion of Illinois law as well.  The Seventh Circuit Court of Appeals stated in 
Belline 
that it is irrelevant if the illegal act involved an insignificant sum.  
Belline
, 940 F.2d at 188.  The court stated: “[A]n employee’s retaliatory discharge claim should not turn on the happenstance of whether the irregular conduct she reports is actually criminal,” noting that public 
policy favors the exposure of apparently criminal activity.  
Belline
, 940 F.2d at 188.  In 
Tanzer
, the federal district court stated that retaliatory discharge claims have expanded to cases in which employees reported illegal or improper conduct to their employers.  
Tanzer
, slip op. at 6.  The 
Tanzer
 court held: “The issue is not whether the acts the Art Institute requested that Tanzer commit were illegal or criminal.  The issue is whether Tanzer could have reasonably thought these requests were improper or illegal acts.”  
Tanzer
, slip op. at 8. 

In his complaint, Mackie alleged that he believed Valerino used the Vaughan Chapter’s resources for personal profit.  Mackie argues that a clearly mandated public policy exists in favor of employees who report potentially criminal activity, and he asserts that he does not have to plead or prove that the reported acts were actually criminal but, under 
Stebbings
, he need only possess a good-faith belief that a crime was committed.  The Vaughan Chapter responds that 
Mackie’s discharge did not violate a clear mandate of public policy because no established policy protects citizens from receiving unsolicited mailings.  The chapter further asserts that no law 
prohibits a board member from using mailing lists of a nonprofit organization for a private business, and that, therefore, Mackie’s claim does not meet the requirement in 
Stebbings
 that a law prohibit the complained-of conduct. 

Therefore, this court must determine whether Mackie has alleged that Valerino engaged in conduct that Mackie believed in good faith was prohibited by law.  Mackie asserts that the mailing list was taken without obtaining approval or consent of the Vaughan Chapter or its members and was used for personal profit.  Mackie argues a trier of fact could conclude that he reasonably believed that Valerino was engaging in a criminal act.

Theft occurs when a person knowingly obtains control over property by deception.  720 ILCS 5/16-1(a)(2) (West 2000).  The statute defines property as: written instruments representing rights concerning anything of value, labor or services; documents; computer data; and whole or partial copies.  720 ILCS 5/15-1 (West Supp. 1993).  Because a mailing list can take any of those forms, it is a type of property that can be stolen. 

In other jurisdictions, misappropriation of a mailing list has been contested in court as a trade secret claim rather than a theft claim.  In
 Town & Country House & Home Service, Inc. v. Newbery
, 3 N.Y.2d 554, 559, 170 N.Y.S.2d 328, 332, 147 N.E.2d 724, 726 (1958), the defendants left the plaintiff’s company to form a competing business.  The Court of Appeals of New York (that state’s highest court) ruled that the plaintiff could enjoin the defendants from soliciting former customers and could recover damages or lost profits resulting from the defendants’ solicitation of the plaintiff’s customers.  
Town & Country
, 3 N.Y.2d at 561-62, 170 N.Y.S.2d at 334, 147 N.E.2d at 728.  
The New York court found that the plaintiff’s customer list was a trade secret because it had taken a great deal of time to create and could not be found in any other public source; therefore, the plaintiff was entitled to injunctive relief.  
Town & Country
, 3 N.Y.2d at 561, 170 N.Y.S.2d at 332, 147 N.E.2d at 727.  

More recently, in 
Schiller & Schmidt, Inc. v. Nordisco Corp.
, 969 F.2d 410, 411 (7th
 Cir. 1992), the plaintiff company sued a former employee who created a competing company, claiming that the former employee misappropriated trade secrets and infringed on its copyright.  When the defendant left the plaintiff company, he took the plaintiff’s mailing list and catalog pictures to use in his own competing catalog.  
Schiller & Schmidt
, 969 F.2d at 411.  The Seventh Circuit Court of Appeals 
held that the use of the pictures was not copyright infringement but awarded damages of $16,545 for misappropriation.  
Schiller & Schmidt
, 969 F.2d at 411.  The misappropriation of the mailing list was conceded, and damages were the only issue.  
Schiller & Schmidt
, 969 F.2d at 415.  The court stated that, “[s]ince the taking of the list was knowing and intentional – it really was theft – Schiller could have sued for Nordisco’s profit attributable to the theft.”  
Schiller & Schmidt
, 969 F.2d at 415.  The
 
Seventh Circuit noted, however, that damages would be limited, and possibly nonexistent, because much of the mailing list contained names compiled by a product manufacturer that could be purchased by any catalog house.  
Schiller & Schmidt
, 969 F.2d at 415.

The Vaughan Chapter contends that no theft occurred because Valerino did not take the mailing list away from the chapter and because the information was used in a manner that did not interfere with the chapter’s access to the list or otherwise permanently deprive the chapter of possession of the list.
(footnote: 2)  The chapter argues that thieves do not use, borrow, or download; they take.  However, theft can occur where the perpetrator does not fully dispossess the owner of any property, as illustrated by identity theft, memorizing a secret recipe, copying a combination to a safe, or downloading confidential files to a computer disk.  At oral argument, counsel for the Vaughan Chapter conceded that the mailing list constituted the chapter’s property.  According to the bystander’s report included in the record, Mackie argued in the trial court that the mailing list could be worth between $500 and $1,000.  Considering the definition of property in Illinois’ theft statute, it is reasonable to conclude that Valerino’s conduct could constitute theft and that Mackie had a good-faith belief that the downloading of the chapter’s mailing list was a criminal act.  

The Illinois Supreme Court in 
Palmateer
 established a public policy favoring citizen crime-fighters, and 
courts have interpreted this to mean that public policy favors the reporting of potentially illegal or improper conduct.  In 
Palmateer
, the plaintiff reported a possible violation of the Illinois Criminal Code without any further description of the potential crime, and the supreme court 
did not mention the crime allegedly committed or the reasonableness of the plaintiff’s allegation. 

Here, 
Mackie alleged that Valerino committed theft by downloading and using the mailing list.  
The definition of theft in Illinois recognizes an offense of obtaining unauthorized control over property or deception in control over property.  
Mackie believed in good faith that Valerino’s downloading and use of the chapter’s mailing list for two privately owned, for-profit businesses was an unauthorized use of the chapter’s resources amounting to theft. 
 Because the citizen crime-fighter approach to retaliatory discharge favors Mackie’s reporting what appeared to be criminal conduct, and what Mackie saw seemed to be the theft of the chapter’s resources, Mackie’s complaint satisfies the third prong of a cause of action for retaliatory discharge.  

We note that this case is before us at the pleadings stage.  To Mackie’s knowledge, Valerino did not have the Vaughan Chapter’s approval to use the mailing list.  Valerino’s use of the mailing list may not constitute theft if other circumstances exist, and the Vaughan Chapter will have the opportunity to present those facts to the trial court on remand.  While we express no opinion as to the ultimate validity of Mackie’s claim, we find that, having drawn all reasonable inferences in Mackie’s favor, his complaint 
is sufficient to state a cause of action for retaliatory discharge under the citizen crime-fighter approach. 

CONCLUSION

Accordingly, we reverse the trial court’s dismissal of Mackie’s complaint and remand this case to the trial court for further proceedings on his retaliatory discharge claim.  

Reversed and remanded.  

CAMPBELL, P.J., and NEVILLE, J., concur.

FOOTNOTES
1:  In 
Buckner v. Atlantic Plant Maintenance, Inc
., 182 Ill. 2d 12, 17, 694 N.E.2d 565, 568 (1998), the Illinois Supreme Court overruled the opinion of the Second District Appellate Court in 
Fellhauer v. City of Geneva
, 190 Ill. App. 3d 592, 546 N.E.2d 791 (1989),
 that a claim for retaliatory discharge may only be brought against the employer and not against the employee or agent who discharged the plaintiff.  However, the supreme court’s ruling in 
Fellhauer 
on the public policy issue was not overturned in 
Buckner
.     

2: On page 19 of its appellate brief, the Vaughan Chapter contends that Mackie admitted that the use of the mailing list did not constitute theft.  However, reading the quoted portion of Mackie’s brief in context, we note that Mackie was paraphrasing the chapter’s position, adding that the chapter “does not get to decide if such conduct is criminal.”