This bills seeks an injunction against the defendants to restrain them from the use of secret formulae or processes of the complainant alleged to have been taken by the defendant Walker, and also the use by the defendants of those formulae or processes, and certain books or papers alleged to have been taken from the complainant's office by the defendant Walker, and from using any information obtained therefrom in connection with defendant corporation's business. The complainant is engaged in the manufacture of lacquers and enamels *Page 225 
at its factory in Newark, New Jersey, and has been engaged in this business for many years and has built up a large and profitable trade. It was engaged in this business in 1906, at which time the defendant Walker first entered its employ as manager. He later became a director and secretary of the company and finally president, and continued in that office until his removal by the board of directors in February, 1925. The bill alleges that subsequent to his removal as president the defendant Walker took from the office of the complainant, without permission or authority, a number of books, papers, invoices, records and documents containing valuable, secret and confidential information, and thereafter entered the employ of the defendant Miner-Edgar Company and imparted this information to that company for use in its business in competition with the complainant, and that included in this information were copies of, or information concerning, certain secret formulae or processes of the complainant company which had been used by that company in connection with its manufacture of lacquers, enamels,c. A preliminary injunction was granted at the inception of this suit, and the affidavits and answering affidavits which were used on the application for that injunction were, by consent, submitted as evidence, and the affiants were cross-examined either in open court or before the master to whom this matter was referred. In addition to that, considerable testimony was taken in open court. I think it has been clearly established by the evidence that the formulae or processes of the complainant company used in connection with its manufacture of laquers, enamels, c., were secret formulae or processes. At the time the defendant Walker entered the employ of the complainant company the formulae used by that company were in the possession of an employe by the name of Reuschle, who guarded them and kept them secret and imparted them only to those employes of the company whose business it was to have them, and as necessary for their use in the manufacture of the company's products. When not in use, these secret formulae were kept under lock and key. Some time after the defendant Walker entered the employ of the complainant these formulae *Page 226 
were delivered to him by Reuschle, and under Walker's direction were transferred from a book in which they were kept by Reuschle to cards which were kept in a filing cabinet under lock and key. Several sets of these cards or books containing the same information were made up under the direction of Dr. Walker and placed in the hands of department heads, who, of necessity, must have the information in connection with the manufacture of lacquers and enamels by the complainant. They were all, however, kept under lock and key when not in use. These secret formulae were referred to in the bill of complaint as "chemical formulae," and they had increased in number from a few hundred, which existed at the time Dr. Walker entered complainant's employ, to several thousand at the time of the termination of that employment. They had been modified and new formulae brought out from time to time during the course of years as exigencies required and because of changing conditions in the market, and with reference to the availability of certain ingredients used in the manufacture, especially during the war period.
It is alleged that the defendant Miner-Edgar Company is a competitor of the complainant and is about to enlarge its manufacturing activities to include a more extensive manufacture of lacquers and enamels, which business, up to the time of the employment of Dr. Walker by that company, had been inconsiderable, and that it is the intention of Dr. Walker and the Miner-Edgar Company to use the secret formulae and processes of the complainant in an active campaign of competition against the complainant company. Partially in support of this allegation the complainant has produced a letter from the Ottawa Leather Company, in which that company claimed that a competing company had offered to furnish the Ottawa company with lacquers and enamels made in accordance with the complainant's formulae and processes, but at a lower price. While the defendant Miner-Edgar Company was not named in the letter it conclusively appears that the letter was inspired by that company and the competitive offer was obtained from it. The defense to this bill is — (1) the complainant has no secret formulae or processes, such formulae or processes as it has, consisting of well-known combinations *Page 227 
or mixing directions known to the trade generally, and which are easily obtainable from trade publications; (2) that if there were any such secret processes or chemical formulae in the possession of the complainant they were the product of Dr. Walker's own brain; that they had been imparted by him to the complainant and not by the complainant to him, and that as between the two they were the property of Dr. Walker and not of the complainant; (3) that no books, papers, documents, invoices or records of the complainant had been taken away by the defendant Walker; (4) that if any such books, papers, records or documents were taken away by the defendant Walker they contained no secret or confidential information and were taken only for the purpose of use by him in connection with his accounting suit then pending before this court, and (5) that no information, confidential or otherwise, contained in these books, papers, documents, c., had been imparted by the defendant Walker to the defendant Miner-Edgar Company, and that it was not the intention of that company to make use of any such information.
The proofs show, however, that the defendant Walker did remove from the complainant's office a number of books, papers, invoices and records containing confidential information, and this was finally admitted by him, and pursuant to the order of this court certain books, papers and documents admitted to have been taken were impounded with the master pending their use in the accounting suit, and after the accounting suit had been disposed of these books and papers were brought into open court by this defendant and tendered to the complainants. This tender was not accepted as a complete compliance with the demands of the complainant, but only pro tanto. He denied having taken any copies of the secret processes or chemical formulae. In view of the admission of Dr. Walker, however, all doubts on this point should be resolved against him, but only for the purpose of this suit and to afford adequate protection to the complainant. And this thought is emphasized by the Ottawa Leather Company letter incident. In the October succeeding the termination of Dr. Walker's employment by the complainant, he was employed by the defendant company as president and general *Page 228 
manager. There are also now in the employ of the defendant company two other former employes of the complainant who were closely associated with Dr. Walker when he was in the same employ. It is admitted that it is the purpose of the defendant company to enlarge its field of activities in connection with the manufacture of lacquers and enamels with the intention of becoming a real competitor of the complainant company. Dr. Walker claims that it is not his intention to use those secret formulae or processes; that it is his intention to forget them entirely, but that that will be one of his difficulties. He claims, however, to be entitled to the free and unrestrained use of whatever knowledge of the manufacture of lacquers and enamels he has, whether gained while in the employ of the complainant company or otherwise. In this connection it is pertinent that prior to Dr. Walker's employment by the complainant he was in the employ of the city of New York in its health department, and that aside from the information which he had gained in the study of his profession he had no knowledge or experience in the manufacture of lacquers or enamels, and almost all of his practical knowledge and experience in this line was gained while in the employ of the complainant. While he emphatically denies that he took any copies of the secret formulae or processes of the complainant, or that he intends to use them in any way in connection with the business of defendant company, his attitude while on the witness-stand in this court, which was one of extreme contempt for the common herd in general, his evasive testimony and inclination to quibble over words and their meaning and use, were not such as to inspire this court with any very great confidence in his testimony or its truthfulness. An instance of his quibbling is evidenced in his distinction between "formulae" and "chemical formulae."
The bill of complaint and supporting affidavits refer to the secret processes of the complainant company as "chemical formulae." In Dr. Walker's answering affidavit and also in his testimony before the court he denied that the complainant company had any "chemical formulae," and in explanation of this denial, on cross-examination, made a distinction between a strict chemical formula, such as expressed by the *Page 229 
symbols H[2] SO[4] and a formula indicating the proportionate quantities of the respective ingredients used in making up lacquers. These he designated as "mixing directions," and refused to consider them as formulae. It was on this fine distinction that his denial of the existence of chemical formulae or their abstraction from the files of the company by him was based. It is also important to note, in connection with this matter, that of the several thousand secret formulae or processes of the complainant company, about ninety per cent. of the complainant's product is produced from approximately three hundred formulae. It also appears that there is a practice amongst manufacturers of lacquers and enamels of analyzing their competitors' products for the purpose of determining the formulae used in such manufacture, and that simple lacquers and enamels are easily analyzed, but complex lacquers and enamels are either difficult or practically impossible of analysis to the extent of determining with accuracy the formulae used. It also appears that the majority of the complainant's formulae or secret processes are included in the complex class.
The evidence also showed conclusively that the defendant corporation had previously attempted in various ways to acquire secret laquer formulae of other concerns engaged in the manufacture of lacquers, but unsuccessfully. In one instance, one Thomas, an employe of the Thomas Engineering Company, was employed by the defendant company in the belief that he was possessed of certain secret formulae or processes for lacquer manufacture, only to find, after buying him out, that he had none. The admitted intention of competition with complainant, the Ottawa letter and other evidence, are all compelling and convincing. Considering all the circumstances of this case, I am forced to the conclusion that the complainant is now, and has been since long before Dr. Walker's services to the complainant began, in possession of valuable secret formulae and processes, call them what you will, used in the manufacture of its lacquers, enamels, c., and that Dr. Walker and his two fellow-employes were employed by the defendant company with the deliberate intention *Page 230 
and design of acquiring the complainant's trade secrets for use in competition with the complainant.
If, therefore, under our decisions, the acts and intentions of the defendants are proper subjects of equitable intervention and restraint, the prayer of the complainant's bill should be granted. Saloman v. Hertz, 40 N.J. Eq. 400; Stone v.Grasselli Can Co., 65 N.J. Eq. 756; Vulcan Detinning Co. v.American Can Co., 72 N.J. Eq. 387 (at p. 395); Taylor Ironand Steel Co. v. Nichols, 73 N.J. Eq. 684; Pomeroy Ink Co. v.Pomeroy, 77 N.J. Eq. 293; Globe Ticket Co. v. InternationalTicket Co., 90 N.J. Eq. 605; Cameron Machine Co. v. Langston,115 Atl. Rep. 212; Golden Cruller Co. v. Manasher, 95 N.J. Eq. 537.
In Stone v. Grasselli Can Co., supra, Mr. Justice Swayze, speaking for the court of errors and appeals, said:
"The right of a manufacturer, whose goods are made by an unpatented secret process, to protection by injunction against the divulging of his secret in a proper case, is now established by a well-considered line of cases in England and in several states (citing cases). * * * These cases establish the principle that employes of one having a trade secret, who are under an express contract, or a contract implied from their confidential relation to their employer, not to disclose that secret, will be enjoined from divulging the same to the injury of their employer, whether before or after they have left his employ; and that other persons, who induce the employe to disclose the secret, knowing of his contract not to disclose the same, or knowing that his disclosure is in violation of the confidence reposed in him by his employer, will be enjoined from making any use of the information so obtained, although they might have reached the same result independently by their own experiments or efforts. We approve the principle thus established."
In that case there was an express contract. The ingredients used in the manufacture of complainant's product were well known to the trade generally and had been used for that purpose for years until complainant hit upon the particular processes involved. It was urged that the only advantage possessed by the complainants arose out of skill in handling *Page 231 
and not out of a secret process, and that there was no secret either in the ingredients or in the method of compounding them. The court found that the complainant combined the ingredients by a different method from any other in use, and the result was a product of a different character, and that the secret consisted in the knowledge of the proper method of mixing the ingredients and treating them in order to produce a product of proper consistency. The same argument advanced there, in effect, has been advanced here.
In Vulcan Detinning Co. v. American Can Co., supra, Mr. Justice Garrison, speaking for the same court and referring to a former officer and director of the complainant company and his use, in a new company, organized by him, of the secret processes of the complainant, said (at p. 395 et seq.):
"To much emphasis has perhaps been placed upon the elements of absolute secrecy in the process and not enough stress has been laid upon the inequitable character of the defendant's conduct in making a use of such process that was inimical to the complainant's interests * * * the main ground for relief disclosed by the complainant's case is the existence of inequitable competition arising from a breach of trust, and, hence, referable to general principles of equity and not to those special doctrines by which unpatented secrets are protected. In the application of these general principles the secrecy with which a court of equity deals is not necessarily that absolute secrecy that inheres in discovery, but that qualified secrecy that arises from mutual understanding, and that is required alike by good faith and by good morals * * * entirely aside from the technical secrecy of the process or the abstract question of property therein, the complainant is entitled to have its trustee, his associates and their servants restrained from using against the interests of the complainant the very process with which its trustee was entrusted for its benefit * * * the secrecy of a process may be viewed in two aspects — first, as having for its object the keeping of the public in ignorance of the nature, source or composition of a commercial product that is put upon the market, and second, as having for its object the prevention of competition by rivals in production * * * as regards *Page 232 
the second, namely, prospective competition, such trust is equally violated if the trustee himself uses the secret to engage in such competition, even though, as would clearly in that case be to his interest, he sedulously kept the secret to himself excepting so far as his selfish use of it required the co-operation of associates and servants. To this the trustee might indeed answer: `It is true that I agreed to keep your secret from others, but I did not agree that I would not myself make use of it in competition with you.' But it is not likely that a court of equity would regard such answer as in anywise ingenuous or exculpatory."
Aside from the question of the secrecy of the processes, therefore, the "second aspect" referred to by Mr. Justice Garrison in the Vulcan Detinning Company Case applies peculiarly to the instant case, as intended competition is admitted and it is also admitted that a competitor in the business of manufacturing lacquers must know a manufacturer's processes in order to meet prices, c.
The case of Taylor Iron and Steel Co. v. Nichols, supra, is cited by counsel for the defendants, but in my judgment does not support the argument against the complainant's right to an injunction. There the terms of an express contract only were involved, and these terms could not be enlarged on the one hand or restricted on the other except as public policy required. The court held that the written contract was so broad as to be in restraint of trade, and, hence, unenforceable. But the rule inStone v. Grasselli, supra, that a contract of secrecy may be implied from a confidential relation between employer and employe and the divulging of a secret enjoined was recognized. The court said as to certain secret processes the written contract governed, and that there was no proof as to the existence of others. One of the issues in that case was the existence of a secret process, and the decree of the court of chancery was reversed, apparently, because there was no proof of the existence of such process as the evidence concerning such existence had been excluded in the court below.
In Pomeroy Ink Co. v. Pomeroy, supra, the court said that while there was no written or express transfer by Pomeroy *Page 233 
to the company of his secret processes, discoveries or inventions, "there is no reason why the transfer of such rights may not be based on an implied as well as an express contract." If Dr. Walker contends that the complainant's formulae and processes were the product of his own brain, which contention I do not think has any basis in fact, then an implied contract might arise by virtue of which these formulae and processes became the property of the complainant, and the absence of a written contract to that effect would be explained by the fact that Dr. Walker was president and general manager of the complainant company, and the language of the court in thePomeroy Ink Company Case would be applicable.
In Globe Ticket Co. v. International Ticket Co., supra, Vice-Chancellor Lane held a complainant barred from injunctive relief because of laches and acquiescence, and this finding was affirmed by the court of errors and appeals, but both courts recognized the rule of Stone v. Grasselli and other cases above cited.
Cameron Machine Co. v. Langston Co., supra, and WigginsSons Co. v. Cott-A-Lap Co., 169 Fed. Rep. 150, both recognized the rule referred to, but no injunction was issued because the facts did not bring those cases within the rule.
In Golden Cruller Co. v. Manasher, supra, Vice-Chancellor Bentley held that the rule of Stone v. Grasselli extended to any information obtained by an employe in a confidential manner, and that there was no distinction between trade secrets respecting secret formulae or designs and other confidential trade information.
While I recognize that "the remedy asked is an extraordinary one and should not be lightly indulged in," as was said inWiggins Sons Co. v. Cott-A-Lap Co., supra, the facts of this case, and the plainly apparent intention of the defendants, although denied by them, in my judgment warrant the issuance of an injunction, and the decree in this cause should be so framed as to protect the complainant, but at the same time, preserve to the defendants their own property rights and privilege of earning a livelihood. The defendants should be restrained from using the secret formulae, processes and *Page 234 
other trade secrets of the complainant and from representing to the trade that they can manufacture according to those formulae. They should not be restrained from representing that they can furnish lacquers and enamels equal in quality to those of the complainant, nor can they be restrained from soliciting business from the trade generally irrespective of whether or not that trade includes former or present customers of the complainant. In order to determine in the future whether or not the terms of the restraining to be imposed have been violated, I would suggest that the three hundred or more formulae of importance to the complainant be sealed and filed in this court subject to inspection by the court for the purpose of enforcing the decree if necessity should require. I will advise a decree in accordance with these conclusions.