Defendants move to dismiss the bill on the ground that it discloses no cause of action.
Complainants, for many years, have been engaged in the box lunch business. They prepare sandwiches and other foods which they pack and then sell at retail, principally to factory workmen. Complainants distribute their lunches on several routes, by automobiles which they station, at the lunch hour or before work starts in the morning, near some large factory or other. In some instances, they are permitted to go into the factory to sell their lunches. *Page 78 
Defendants were two of the salesmen of complainants until last month, when they quit their employment and embarked in a competing box lunch business of their own. They offer their lunches for sale in the same manner and at some of the same factories as complainants. Complainants charge that such competition is inequitable and pray that defendants be enjoined from selling "to any of the customers of the complainants on any of the routes or stops heretofore served by complainants."
The general rule is well established that, unless prohibited by a valid contract, a former employe may properly sell to customers of his late employer, in competition with him. Salomon v.Hertz, 40 N.J. Eq. 400; Newark Cleaning and Dye Works, Inc., v.Gross, 97 N.J. Eq. 406; Maas Waldstein Co. v. Walker,100 N.J. Eq. 224, 234; 102 N.J. Eq. 328; Lewitter v. Adler,101 N.J. Eq. 74; Bond Electric Corp. v. Keller, 113 N.J. Eq. 195;Automobile Club v. Zubrin, 127 N.J. Eq. 202. By exception to the rule Vice-Chancellor Backes, in the Gross Case, observed that there are cases where courts have interfered to protect the owner of a business "against invasion upon list and route customers by former drivers and solicitors, where the customer is latent or the field potential."
The general rule, and not the exception, applies, where the former employer is a manufacturer or wholesaler dealing with jobbers or retail merchants. The names of the customers are not a trade secret for everyone knows they buy from someone. TheSalomon, Maas Waldstein and Bond Electric Cases are examples. Likewise, where the complainant sells to members of a readily ascertained class, even though some of the class do not buy like services or articles from anybody. Thus the Newark Cleaning and Dyeing Company was a wholesaler. Defendant's knowledge of the names of the company's customers, gained through his employment by it, was not considered a trade secret, since any interested person could readily compile a list of retail cleaners and dyers, although he would be ignorant, until he made inquiry, whether any particular retailer did his own cleaning and dyeing or had it done by a wholesaler. Lewitter was in the window cleaning *Page 79 
business. Everyone having show windows must clean them and will probably engage a professional window cleaner if the latter will do the work well enough and cheap enough. In the Zubrin Case, the complainant was engaged in selling automobile liability insurance. Defendant, a former employe, became an automobile insurance broker, at liberty to solicit complainant's customers. Every automobile owner was a prospect for both complainant and defendant, although many automobile owners do not carry insurance.
The exception suggested by Vice-Chancellor Backes has been applied in one case, Abalene Exterminating Co., Inc., v. Oser,125 N.J. Eq. 329. Complainant was in the business of exterminating insect and rodent pests. The court held that information of the names and addresses of complainant's patrons, which was acquired by an employe, was complainant's property which would be protected by injuntcion. "It was not information that was available to or could readily be obtained by the public or any other individual." While Vice-Chancellor Buchanan in this opinion disapproves Lewitter v. Adler, supra, I think the cases do not conflict. All property owners, especially those whose buildings have large windows, must have their windows cleaned, just as all automobile owners are potential buyers of liability insurance; while, on the other hand, most property owners do not suffer from insects and rodents to such an extent as to require the service of an exterminator and the ones who do need such service, do not advertise the fact. A list of such prospects can be compiled only at considerable expense. Here is the distinction.
In the case before me, we can start with the assumption that most people eat lunch. Wherever there is a large factory, there is a field for the box lunch vendor, even though many of the workers may bring their lunches from home. The existence and location of such factories is known to, or easily discovered by anyone; hence the knowledge which a route man gains of where to offer his box lunches for sale, is not a trade secret of his employer.
Sound public policy encourages employes to seek better jobs from other employers or to go into business for themselves. *Page 80 
Contracts which hinder their so doing are strictly construed and rigidly scanned and are declared void unless necessary for the reasonable protection of the employer. In the absence of agreement, as the decisions above cited demonstrate, there must be a very strong case before the court will restrain the former employe from competing with his former employer. In most jurisdictions, there seems to be no exception to the rule that the former employe is at liberty to compete. 23 A.L.R. 423;126 A.L.R. 758.
The bill charges that defendants frequently represent their box lunches to be the product of complainant but no relief is prayed in respect to such misrepresentation. The bill will be dismissed, with costs, since it does not disclose that it is inequitable for defendants to serve customers of complainants. *Page 81