SCM CORPORATION, Appellant,

v.

The TRIPLETT COMPANY et al., Appellees.

No. 14465.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 19, 1966.

Rehearing Denied Feb. 23, 1966.

James D. Baskin, Jr., Richard E. Goldsmith, San Antonio, for appellant.

Maverick, Tynan & Gochman, San Antonio, for appellees.

MURRAY, Chief Justice.

This suit was instituted by SCM Corporation, seeking a temporary and permanent injunction against Max J. Triplett, Richard Ritch, and The Triplett Company, a corporation organized by Triplett for the purpose of engaging in a competitive business with SCM Corporation. SCM is engaged in the business of selling SCM photocopy machines and paper and other supplies used in such machines. SCM also sought an accounting and damages.

The trial court, after hearing evidence, overruled the motion for temporary injunction and SCM has prosecuted this appeal.

Appellant's brief is divided into two parts. The first part relates to the common-law

rule of unfair competition by former employees with their former employer, in which it is contended that all three appellees were so engaged in violation of the common-law rule against unfair competition. Part two relates to the breach of an employment contract signed by Triplett in which he covenanted not to engage in business against his employer for a period of six months after termination of his employment; "and if there shall be any violation thereof during said six-month period, then said period shall be extended for six (6) months after cessation of such violation." Triplett went to work as a salesman for SCM in San Antonio, Texas, on January 1, 1963, at which time he had signed a contract containing the following negative covenant:

"You agree, during the period of your employment by the Company, not to engage in any business activity which is or may be directly or indirectly competitive with that of the Company. You further agree not to engage or be employed in any capacity or relation, for a period of six (6) months after the termination of your employment with the Company, however effected, in the business of selling photocopy equipment and supplies within the boundary of any territory in which you shall have worked for the Company during the period of one (1) year next preceding the termination of your employment hereunder, and if there shall be any violation thereof during said six-month period, then said period shall be extended for six (6) months after cessation of such violation. Such undertaking not to sell photocopy equipment and supplies shall be enforceable by injunction or other legal process."

Thereafter, four consecutive contracts were signed by these parties each containing the above negative covenant. The last contract agreed to by the parties was signed on March 12, 1964.

Sometime prior to February 1, 1965, SCM decided upon a new form of compensation for its sales managers, which would apply to Triplett as he had theretofore been made a sales manager. The new plans of compensation were Plans A, B, and C. Written notice of such new plans, printed in bulletin form, was mailed by SCM to all sales managers, including Triplett, on January 28, 1965. In March, 1965, a new contract, embodying the provisions of Plan B and the usual terms of employment, was mailed to Triplett, but he refused to execute the new contract. Triplett testified that this new plan of pay would mean a financial disaster for him. On April 20, 1965, Triplett resigned as sales manager for SCM and entered business in competition with SCM on or about April 26, 1965.

■ In approaching the questions raised herein, we must view the record in the light most favorable to the action taken by the trial court, which was a refusal of a temporary injunction. In 31 Tex.Jur.2d, § 37, p. 92, it is stated: "In determining the correctness of the trial court's action in granting or denying a temporary injunction, the evidence will be considered in the light most favorable to the successful party." Lee v. Lee, Tex.Civ.App., 359 S.W.2d 654; Red Devil Club v. State, Tex. Civ.App., 307 S.W.2d 627; Southwestern Associated Tel. Co. v. City of Dalhart, Tex. Civ.App., 254 S.W.2d 819.

■ The granting or refusing of a temporary injunction is addressed to the sound discretion of the trial judge, and his determination will not be disturbed on appeal unless a clear abuse of discretion is shown. 31 Tex.Jur.2d, § 37, p. 89. Southwest Weather Research, Inc., v. Duncan, 160 Tex. 104, 327 S.W.2d 417; Dallas General Drivers, Warehousemen and Helpers v. Wamix, Inc. of Dallas, 156 Tex. 408, 295 S.W.2d 873.

■ The contract, signed by the parties on March 12, 1964, the only contract in ef-

fect at the time the difficulties herein arose, provided that it could be terminated at any time by either party "on written notice to the other." SCM did not exercise its right to terminate this contract at any time. The trial court might well have found from the evidence that the change of the plan of payment by SCM was a breach of this contract under which the parties were operating. It is well settled law that a former employer cannot enforce a negative covenant in a contract of employment by temporary injunction where it has breached the contract. Langdon v. Progress Laundry & Cleaning Co., Tex.Civ.App., 105 S.W.2d 346 (wr. ref.); 155 A.L.R. 164.

■ If the contract had provided for a change of the wage rate, the result would be opposite to that in the Langdon case. National Linen Service Corp. v. Summers, Tex.Civ.App., 251 S.W.2d 795. We therefore conclude that the trial court did not err in refusing the temporary injunction based on this negative covenant.

■ This brings us to a consideration of whether the trial court erred in refusing to grant a temporary injunction to appellant, against both Triplett and Ritch, based upon the common law prohibiting unfair competition by former employees with their former employer. SCM was engaged in the business of selling SCM photocopy machines, and paper and other supplies used in those machines. The area assigned to Triplett was Bexar County and sixty other South Texas counties, but SCM has stated that if the Court decides that the sixty-one county area is an unreasonably large territory, then and in that event it asks that the temporary injunction be confined only to Bexar County. Appellant contends that the list of customers to whom SCM photocopy machines have been sold is a secret and confidential list, and constitutes a trade secret which it is entitled to protect by a temporary injunction. There was no question but that Triplett knew this list because he had sold all but six of these machines, and Ritch undoubtedly knew this list because he had worked for SCM as a repair and maintenance man on these machines. Triplett contends that this list of customers was not a trade secret because it was easily ascertained by telephone calls to business houses and professional offices in Bexar County. Triplett testified that he had employed the "Kelly Girls," who by the aid of a Chamber of Commerce list and telephone directory were able to secure a list of not only the location of SCM photocopy machines, but of machines sold by many other firms. The trial court had a right to believe this testimony and to impliedly find that the list of SCM customers was readily ascertainable by anyone, and was therefore not a trade or business secret. There are some nine competitors engaged in the same business as SCM in Bexar County, and two of them, Allen Goldsmith and Vernon Allencaster, testified that they knew the location of all of the SCM machines sold in Bexar County, but that it took some trouble and considerable expense to secure this list. Appellant has cited cases, among them Hyde Corporation v. Huffines, 158 Tex. 566, 314 S.W.2d 763, and K. & G. Oil Tool & Service Co. v. G. & G. Fishing Tool Service, 158 Tex. 594, 314 S.W.2d 782, holding in effect that a company was entitled to protection against former employees using its trade secrets which they had learned about in confidence, but in each of these cases something quite different from a list of customers that could readily be obtained from a Chamber of Commerce list and telephone directory was involved. Appellant also cites the cases of SCM Corporation v. Apex Copy System, Inc., decided on May 21, 1965, in the State of New York and not yet published, and Town & Country House & Home Service, Inc. v. Newbery, 3 N.Y.2d 554, 170 N.Y.S. 2d 328, 147 N.E.2d 724. These cases are from a foreign jurisdiction and we feel they may be distinguished from the fact situation we have here.

■ A very good statement that might well be applied here is found in Haut v. Rossbach, Court of Chancery of New Jersey, 128 N.J.Eq. 77, 15 A.2d 227, also

found in Regulation of Trade, Kronstein and Miller, p. 608, and reads as follows:

"The general rule is well established that, unless prohibited by a valid contract, a former employee may properly sell to customers of his late employer, in competition with him. Salomon v. Hertz, 40 N.J.Eq. 400, 2 A. 379; Newark Cleaning & Dye Works v. Gross, 97 N.J.Eq. 406, 128 A. 789; Maas & Waldstein Co. v. Walker, 100 N.J.Eq. 224, 234, 135 A. 275; Id., 102 N.J.Eq. 328, 140 A. 921; Lewitter v. Adler, 101 N.J.Eq. 74, 137 A. 541; Bond Electric Corp. v. Keller, 113 N.J.Eq. 195, 166 A. 341; Automobile Club v. Zubrin, 127 N.J.Eq. 202, 12 A.2d 369. By exception to the rule Vice Chancellor Backes, in the *Gross* case, observed that there are cases where courts have interfered to protect the owner of a business 'against invasion upon list and route customers by former drivers and solicitors, where the customer is latent or the field potential.'

"The general rule, and not the exception, applies, where the former employer is a manufacturer or wholesaler dealing with jobbers or retail merchants. The names of the customers are not a trade secret for everyone knows they buy from someone. The *Salomon, Maas,* & *Waldstein* and *Bond Electric* cases are examples. Likewise, where the complainant sells to members of a readily ascertained class, even though some of the class do not buy like services or articles from anybody. Thus the Newark Cleaning & Dyeing Company was a wholesaler. Defendant's knowledge of the names of the company's customers, gained through his employment by it, was not considered a trade secret, since any interested person could readily compile a list of retail cleaners and dyers, although he would be ignorant, until he made inquiry, whether any particular retailer did his own cleaning and dyeing or had it done by a wholesaler. Lewitter was in the window cleaning business. Everyone having show windows must clean them and will probably engage a professional window cleaner if the latter will do the work well enough and cheap enough. In the *Zubrin* case, the complainant was engaged in selling automobile liability insurance. Defendant, a former employee, became an automobile insurance broker, at liberty to solicit complainant's customers. Every automobile owner was a prospect for both complainant and defendant, although many automobile owners do not carry insurance.

"The exception suggested by Vice Chancellor Backes has been applied in one case, Abalene Exterminating Co. v. Oser, 125 N.J.Eq. 329, 5 A.2d 738, 739. Complainant was in the business of exterminating insect and rodent pests. The court held that information of the names and addresses of complainant's patrons, which was acquired by an employee, was complainant's property which would be protected by injunction. 'It was not information that was available to or could readily be obtained by the public or any other individual.' While Vice Chancellor Buchanan in this opinion disapproves Lewitter v. Adler, supra, I think the cases do not conflict. All property owners, especially those whose buildings have large windows, must have their windows cleaned, just as all automobile owners are potential buyers of liability insurance; while, on the other hand, most property owners do not suffer from insects and rodents to such an extent as to require the service of an exterminator and the ones who do need such service, do not advertise the fact. A list of such prospects can be compiled only at considerable expense. Here is the distinction."

There is another reason why the trial court did not abuse its discretion in refusing to issue a temporary injunction, because it would have in all probability given appellant all the relief to which it would be entitled on the final hearing, insofar as injunctive relief is concerned. 31 Tex.Jur.2d, § 30, p. 79; Ledel v. Bill Hames Shows, Inc., Tex.Civ.App., 367 S.W.2d 182. The contract provided that Triplett would not compete with appellant for a period of six months after his employment was terminated. This occurred on April 20, 1965, when Triplett tendered his resignation and began competing with appellant almost immediately. No application for a temporary injunction was filed until July 9, 1965, more than two months after Triplett had begun competing with appellant and soliciting appellant's customers for their business. There is no showing here that appellant could not have obtained a hearing on the merits of the case for a permanent injunction, together with a hearing for damages, at once or within a very short while. The temporary injunction was refused on October 18, 1965, and there is no showing that since that date appellant has made any effort to secure a hearing on the merits of the case in the trial court. Ledel v. Bill Hames Shows, Inc., supra. Yet appellant asks this Court to reverse the judgment of the trial court and now grant a temporary injunction, some eight months after Triplett began competing with appellant. There is a burden upon appellant to show diligence in trying to dispose of the case upon its merits in the trial court before it will have a right to expect this Court to issue a temporary injunction at this late date. 31 Tex. Jur.2d, § 30, p. 81; Texas Foundries, Inc. v. International Moulders & Foundry Workers Union, 151 Tex. 239, 248 S.W.2d 460; Ledel v. Bill Hames Shows, Inc., supra.

The trial court did not abuse its discretion in refusing to grant a temporary injunction. The judgment is affirmed.

BARROW, Justice.

I concur that the trial court did not abuse its discretion in refusing to grant this temporary injunction pending trial on the merits.