Appellant=s Motion for Rehearing En Banc is Overruled as Moot; Opinion
of July 15, 2008, Withdrawn; Affirmed and Substitute Memorandum Opinion on
Rehearing filed October 9, 2008








Appellant=s Motion for Rehearing En Banc is Overruled as Moot;
Opinion of July 15, 2008, Withdrawn; Affirmed and Substitute Memorandum Opinion on Rehearing filed
October 9, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00380-CV

_______________

 

BLUEBONNET PETROLEUM, INC., Appellant

 

V.

 

KOLKHORST PETROLEUM COMPANY, INC., Appellee

                                                                                                                                               


On Appeal from the 335th District Court

Washington County, Texas

Trial Court Cause No. 33783

                                                                                                                                                

 

S U B S T I T U T E   M E M O R A N D
U M   O P I N I O N

Appellant=s motion for rehearing en banc is
overruled as moot. The memorandum opinion issued on July 15, 2008 is withdrawn.
This memorandum opinion is substituted in its place.








Appellant, Bluebonnet Petroleum,
Inc., challenges a summary judgment in favor of appellee, Kolkhorst Petroleum
Company, Inc., on the grounds that: (1) the trial court considered inadmissible
summary judgment evidence, (2) Kolkhorst did not establish entitlement to
summary judgment as a matter of law, and (3) there are genuine issues of
material fact precluding summary judgment for Kolkhorst.  Bluebonnet also
appeals from the denial of its motion for partial summary judgment on the
grounds that: (1) Ray Robinson was an employee and officer of Bluebonnet and
owed Bluebonnet a fiduciary duty, and (2) Kolkhorst knowingly acted in
combination with Ray Robinson and received the benefits of Robinson=s breach of fiduciary duty to
Bluebonnet by contracting with Circle G Truck Stop, Inc.  We affirm.             

Factual and
Procedural Background

In August of 2001, Ray Robinson went
to work with his sister, Kathy Smith, at Bluebonnet Petroleum.  Smith was
president of Bluebonnet at the time.  Robinson began as an employee of the company
and, according to him, requested to be re-categorized as a consultant one year
later.  (This is one of the areas of contention between the parties, with
Bluebonnet contending that Robinson was an employee and an officer of the
corporation and Robinson contending he was merely an employee at the inception
and nothing more than a consultant at the end.)  Throughout his time with the company, Robinson sought
to increase Bluebonnet=s gasoline-sales volume by acquiring new accounts.  He never
signedCor was asked to signCan employment agreement, a
non-compete agreement, or any form of confidentiality agreement.  








In January of 2005, Kolkhorst, a
competitor of Bluebonnet, created a new marketing position and offered it to
Robinson.  On January 19, Robinson accepted the offer.  At that time, however,
Robinson was in contact with a number of convenience stores on behalf of Bluebonnet,
attempting to gain their fuel-supply business.  Circle G in Gonzales was one of
the stores.  Although Robinson had already accepted the job offer from
Kolkhorst, he still represented Bluebonnet on January 21 when he met with
Circle G in a previously scheduled meeting to present a fuel agreement from
Bluebonnet.  During that meeting, Robinson tendered the agreement, but also
informed Circle G he would not be personally handling the account because he
was leaving Bluebonnet to work for Kolkhorst.  Robinson told Cody Fry, a
representative of Circle G, that Bluebonnet would do a good job.  Robinson did
not discourage Circle G from executing the contract with Bluebonnet. 
Nevertheless, Circle G did not sign the contract with Bluebonnet at that time. 

Later that same day, Robinson gave
Bluebonnet notice that he was quitting, and offered to continue working for two
weeks.  Bluebonnet declined the offer and their business affiliation ceased
immediately.  Bluebonnet continued to pursue Circle G.  But after hearing
subsequent presentations from both Bluebonnet and Kolkhorst, Circle G decided
to contract with Kolkhorst.  Robinson was not involved in the subsequent
presentations.  

Bluebonnet sued Robinson and
Kolkhorst alleging: (1) theft of trade secrets and confidential information,
(2) breach of fiduciary duties, (3) interference with prospective business
relationships, and (4) civil conspiracy.  On August 25, 2006, the trial court
granted Kolkhorst and Robinson summary judgment on Bluebonnet=s claims for theft of trade secrets
and confidential information and civil conspiracy.  The trial court also
granted summary judgment to Kolkhorst alone on Bluebonnet=s breach-of-fiduciary-duty and inducement-to-breach-of-fiduciary-duty
claims.  The trial court simultaneously denied Bluebonnet=s motion for partial summary
judgment, in which Bluebonnet asserted that it was entitled as a matter of law
to findings that: (1) Robinson was a corporate officer of Bluebonnet and owed
it a fiduciary duty to act in its best interest; (2) Robinson was an employee
of Bluebonnet and owed it a duty to not use proprietary information acquired
during his employment to Bluebonnet=s detriment; (3) Robinson breached
one or more of his legal obligations to Bluebonnet; and (4) Kolkhorst
participated in Robinson=s breach of one or more of his duties and benefitted
therefrom.  

Bluebonnet filed a motion to
reconsider, and on February 23, 2007, the trial court reaffirmed the summary
judgment and supplemented its order of August 25, 2006, granting summary
judgment to Kolkhorst on Bluebonnet=s last remaining claim against itCtortious interference with
prospective business relationships.  On March 7, 2007, the trial court granted
Kolkhorst=s motion for severance.  This appeal followed.

 








                                                       Standard of Review

Kolhorst moved for both a traditional
summary judgment and a no-evidence summary judgment.  A trial court may grant
traditional summary judgment if the motion and summary-judgment evidence show
that, except as to the amount of damages, there is no genuine issue of material
fact and the moving party is entitled to judgment as a matter of law. Tex. R.
Civ. P. 166a(c). In reviewing a summary judgment, we take as true all evidence
favorable to the non-movant and we indulge every reasonable inference, and
resolve any doubts, in the non-movant=s favor.  Sudan v. Sudan, 199
S.W.3d 291, 292 (Tex. 2006).  

A trial court must grant a no‑evidence
motion for summary judgment if: (1) the moving party asserts that there is no
evidence of one or more specified elements of a claim or defense on which the
adverse party would have the burden of proof at trial; and (2) the respondent
produces no summary-judgment evidence raising a genuine issue of material fact
on those elements.  See Tex. R. Civ. P. 166a(i). In reviewing a no‑evidence
motion for summary judgment, we view all of the summary-judgment evidence in
the light most favorable to the non-movant, indulging every reasonable
inference and resolving any doubts against the movant. City of Keller v.
Wilson, 168 S.W.3d 802, 824B25 (Tex. 2005).

When, as here, the trial court does
not specify on which grounds the summary judgment is based, the appealing party
must show that it is error to base it on any ground asserted in the motion.  Star-Telegram,
Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1996); Carr v. Brasher, 776
S.W.2d 567, 569 (Tex. 1989).  Further, appellant must assign error to each
independent ground asserted in the summary judgment or the summary judgment is
affirmed as to that issue.  Star-Telegram, Inc., 915 S.W.2d at 473;
De Laurentis v. United Servs. Auto. Ass=n, 162 S.W.3d 714, 726 (Tex. App.CHouston [14th Dist.] 2005, pet.
denied); Sudan v. Sudan, 145 S.W.3d 280, 289B90 (Tex. App.CHouston [14th Dist.] 2004), rev=d on other grounds, 100 S.W.3d 291 (Tex. 2006).








To preserve an issue for appeal, the
non-movant must expressly present to the trial court, by written answer or
response, any issues defeating the movant=s entitlement to judgment.  McConnell
v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 343 (Tex. 1993); Tello
v. Bank One, N.A., 218 S.W.3d 109, 116 (Tex. App.CHouston [14th Dist.] 2007, no pet.) (A[W]e may not consider grounds for
reversal of a summary judgment that were not expressly presented to the trial
court by written response to the motion.@); see also Rodriquez v. Gulf
Coast & Builders Supply, Inc., No.  14-05-00930-CV, 2006 WL 3797722, at
*2 (Tex. App.CHouston [14th Dist.] Dec. 28, 2006, no pet.)  (mem.  op.) (AAs a general rule, a complaint is
preserved for appellate review only if the record establishes the complaint was
made known to the trial court in a timely manner, and the trial court ruled on
the complaint.@).  In a similar vein, an issue not supported by authority is waived. 
Trenholm v Ratcliff, 646 S.W.2d 927, 934 (Tex. 1983); In re E.L.T.,
93 S.W.3d 372, 375 (Tex. App.CHouston [14th Dist.] 2002, no pet.); Casteel-Diebolt v.
Diebolt, 912 S.W.2d 302, 304B05 (Tex. App.CHouston [14th Dist.] 1995, no writ). 
When both parties move for summary judgment on the same issues and the trial
court grants one motion and denies the other, the reviewing court considers the
summary-judgment evidence presented by both sides, determines all questions
presented, and renders the judgment the trial court should have rendered.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).

Analysis

A.        Kolkhorst=s Motion for Summary Judgment

1.         Objections
to Summary-Judgment Evidence

Bluebonnet contends that the trial
court erred in granting summary judgment to Kolkhorst in part because it
considered inadmissible summary-judgment evidence.  We disagree.    








The evidence offered in support of a
motion for summary judgment must be admissible.  Tex. R. Civ. P. 166(a)(f).  We
review a trial court=s decision to admit or exclude evidence under an
abuse-of-discretion standard.  Nat=l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527B28 (Tex. 2000).  Under this standard,
we may not overrule the trial court=s decision unless the trial court acted
unreasonably or arbitrarily, and without reference to guiding rules or
principles.  Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex.
1991).   

In one of its
objections, Bluebonnet claims that the following two sentences in Robinson=s affidavit are
hearsay:   AI did not give copies of any of the
materials in my files at Bluebonnet Petroleum to Kolkhorst Petroleum.  I was
never requested to [do] this by Kolkhorst Petroleum.@  We disagree.  Hearsay is an
out-of-court statement offered to prove the truth of the matter asserted.  See
Tex. R. Evid. 801(d).  The objected-to statements by Robinson are not hearsay
and the trial court did not err in overruling the objection.  See id.  801(a),
(d).

Aside from the two non-hearsay sentences
in Robinson=s affidavit, we affirm Kolkhorst=s summary judgment on the strength of
undisputed summary-judgment evidence to which Bluebonnet did not object.  There is no harm,
therefore, even if the trial court=s rulings on
Bluebonnet=s other objections constitute an abuse of discretion. 
Accordingly, we do not
address the propriety of Bluebonnet=s remaining objections or the trial
court=s failure to sustain them.

2.         The
Merits

The trial court granted summary
judgment on the four claims Bluebonnet asserted against Kolkhorst.  Bluebonnet
contends that Kolkhorst did not show that it was entitled to summary judgment
as a matter of law and that Bluebonnet set forth genuine issues of material
fact on each claim.  We disagree.  

a.         Theft
of trade secrets and confidential information








Bluebonnet=s first claim is for the theft of
trade secrets and confidential information.  An employee may use general skills
and knowledge obtained through previous employment to compete with the former
employer.  Sharma v. Vinmar Intern., Ltd., 231 S.W.3d 405, 424 (Tex.
App.CHouston [14th Dist.] 2007, pet.  dism=d).  However, the conduct of a
former employee in competing with his former employer is not unlimited.  A
former employee may not use confidential or proprietary information acquired
during the employment relationship in a manner adverse to his former employer. 
T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc., 965 S.W.2d 18,
22 (Tex. App.CHouston [1st Dist.] 1998, no pet.).  Further, a former employee may not: A(1) appropriate the company=s trade secrets; (2) solicit his
employer=s customers while still working for
his employer; (3) solicit the departure of other employees while still working
for his employer[;] or (4) carry away confidential information, such as
customer lists.@  Abetter Trucking Co. v. Arizpe, 113 S.W.3d 503, 512
(Tex. App.CHouston [14th Dist.] 2003, no pet.).

A trade secret is any formula,
pattern, or compilation of data used in one=s business which presents an
opportunity to obtain an advantage over a competitor who does not know or use
it.  In re Bass, 113 S.W.3d 735, 739 (Tex. 2003).  To determine whether
information shall be considered a trade secret, we analyze the following six
factors: 

(1) the extent to which the information is known
outside the claimant=s business; 

(2) the extent to which the information is known by
employees and others involved in the claimant=s business; 

(3) the extent of the measures taken by the claimant
to guard the secrecy of the information; 

(4) the value of the information to the claimant and
to its competitors; 

(5) the amount of effort or money expended by claimant
in developing the information; and 

(6) the ease or difficulty with which the information
could be properly acquired or duplicated by others.  

Id.      

The burden of proving secrecy status
falls on the party claiming secrecy status.  Stewart & Stevenson Servs.,
Inc. v. Serv-Tech., 879 S.W.2d 89, 99 (Tex. App.CHouston [14th Dist.] 1994, writ denied). 
There is no cause of action for misappropriation of information that is not
either secret, or at least substantially secret.  SP Midtown, Ltd. v. Urban
Storage, L.P., No. 14-07-00717-CV, 2008 WL 1991747, at *5 n. 5 (Tex. App._Houston [14th Dist.] May 8, 2008,
pet. denied) (mem. op.) (citing Stewart & Stevenson Servs., Inc.,
879 S.W.2d at 99).             








Bluebonnet claims that the evidence
shows that Robinson possessed trade secrets and confidential information
belonging to Bluebonnet and revealed them to Kolkhorst.  We disagree.  In his
position at Bluebonnet, Robinson sought out potential customers and attempted
to negotiate contracts for the benefit of Bluebonnet.  At the time Robinson
left Bluebonnet, he was working on several potential accounts.  Although he
gave the names of some potential customers to Kolkhorst, we see no evidence
that he revealed additional information regarding these accounts, such as
feasibility studies, notes, or preferences of the customer.  The issue,
therefore, is whether the mere identity of the potential accounts with which
Robinson was working when he left Bluebonnet is a trade secret, or even merely
proprietary information accorded similar protection.  To decide whether the information
qualifies as a trade secret we must consult the six factors listed above. 

Consistent with the first factor, to
qualify as a trade secret in Texas, the information must truly be Asecret.@  Zoecon Indus. v. American
Stockman Tag, 713 F.2d 1174, 1179 (5th Cir. 1983).  A trade secret is
information not Agenerally known by others in the same business nor readily
ascertainable by an independent investigation.@  Id.  Kathy Smith specified
in her affidavit that she and Robinson did not make customer information known
to others outside their business, except to develop the potential customer as
an account for Bluebonnet.  However, the summary-judgment evidence does not show
that this information was not known by others outside of Bluebonnet from a
source other than Smith or Robinson.  Although Kolkhorst admitted he was not
aware that Circle G was in the market for a new fuel contract before Robinson
mentioned Circle G, we see no evidence that this information was not common
knowledge to others in the business or in the community.  By contrast, there
was testimony from Circle G=s Cody Fry that Aeverybody@ in Gonzales knew about the project. 
Similarly, regarding the second factor, we see no evidence that this
information was known only to Robinson and Smith and not other employees of
Bluebonnet.  








To trigger the third factor, the Aowner of the secret must do something
to protect himself.  He will lose his secret by its disclosure unless it is
done in some manner by which he creates a duty and places it on the other party
not to further disclose or use it in violation of that duty.@  Am. Precision Vibrator Co. v.
Nat=l Air Vibrator Co., 764 S.W.2d 274, 276 (Tex. App.CHouston[1st Dist.] 1988, no writ.). 
Bluebonnet did not require Robinson to sign a non-compete agreement or a
confidentiality agreement.  Smith claims that if she had known about Robinson=s intentions to work for Kolkhorst,
she would not have allowed him to meet with Circle G to discuss finalizing the
contract.  However, what she would have done is different from actually acting
to protect the information.  Bluebonnet has produced no evidence of any steps
taken to protect its potential-client information.

Concerning the fourth and fifth
factors, although the information had a potentially high value to Bluebonnet
and competitors if they were to obtain a contract with the prospective customer,
the summary-judgment evidence does not show that Bluebonnet expended a
substantial amount of effort or money in procuring the information.  Kathy
Smith says in her affidavit that Robinson spent a lot of time developing the
Circle G account.  However, we have no evidence that Robinson spent much time
identifying potential accounts. 

Finally, regarding the sixth factor,
there is no evidence that the names of the people Robinson contacted on behalf
of Bluebonnet were not readily ascertainable by the public or someone with
Robinson=s general knowledge, experience, and
skills.  For example, although Kolkhorst admits it had no knowledge of Circle G
before Robinson, that is no indication that the name of this account was not
readily ascertainable.  Again, according to Cody Fry, Aeverybody@ in Gonzales knew about the Circle G
project. Thus, this information is not a trade secret.








Even if the information does not
amount to a trade secret, Bluebonnet seems to contend that Kolkhorst used
improper means to obtain its Aconfidential information@ through Robinson. However, the
summary-judgment evidence does not support the argument that such information
was either secret or at least substantially secret.  The information must not
be publicly available or readily ascertainable by independent investigation.  See
Sautter v. Comp Solutions Network, Inc., No.  14-98-00555-CV, 1998 WL
802481, at *4 (Tex. App.CHouston [14th Dist.] November 19, 1998, no pet.)  (not
designated for publication); see also Allan J. Richardson & Assoc., Inc.,
718 S.W.2d at 837 (citing SCM Corp. v. Triplett Co., 399 S.W.2d 583, 586
(Tex. Civ. App._San Antonio 1966, no writ)).  This court has previously held that when a
customer list is not considered to be a trade secret and its contents are
readily ascertainable from sources other than the employer=s records, the former employee may
legitimately compete with his former employer for those customers. Sautter,
1998 WL 802481, at *4; see also Gaal v.  BASF Wyandotte Corp., 533
S.W.2d 152, 155 (Tex.  Civ.  App._Houston [14th Dist.] 1976, no writ). Bluebonnet has
not met the burden to show that the data compilations in question constitute
sufficiently secret information to qualify for protection.  See Stewart
& Stevenson Servs., Inc., 879 S.W.2d at 99. 

In its motion for rehearing,
Bluebonnet asserts that our prior opinion in this case conflicts with this
Court=s recent opinion in  SP Midtown,
Ltd. v. Urban Storage, L.P., 2008 WL 1991747.  Specifically, Bluebonnet
asserts that the standard for reviewing summary-judgment evidence applied by
this Court in our prior opinion is inconsistent with the standard applied in SP
Midtown.  In that case, we reversed a trial court=s no-evidence summary judgment on the
basis that more than a scintilla of evidence was produced demonstrating that a
competitor had misappropriated the plaintiff=s trade secrets in order to lure
business away from the plaintiff.  Id.  at *5B6.  We disagree with Bluebonnet=s assertion that these opinions
conflict.  A review of both cases demonstrates a disparity in the
summary-judgment evidence provided to the trial court in each case.








SP Midtown involved a suit by the owner of a
self-storage facility against a former employee and their new employer based on
multiple theories of recovery, including misappropriation and/or misuse of
trade secrets, tortious interference with prospective business relationships,
and conspiracy.  Id.  at *3.  Specifically, Urban Storage alleged that,
after accepting a position with SP Midtown but prior to resigning from Urban
Storage, employee Welch had faxed daily rental logs of Urban Storage=s tenants to SP Midtown.   Included
within this information was the following: (1) names of tenants; (2) dates of
contracts for storage; (3) the terms and obligations of each contract; (4) the
number and size of storage units leased; and (5) the contact persons for each
tenant.  Id.  at *5.  Urban Storage further alleged that Welch and SP
Midtown then used this information to directly solicit Urban Storage=s tenants whose leases were up for
renewal.  Id. at 2B3.  A significant portion of our opinion in SP Midtown
was devoted to an analysis of Urban Storage=s summary-judgment evidence offered
to prove that the information conveyed to SP Midtown contained trade secrets.  Id.
 at 5B6.  

Applying the six-factor analysis from
In re Bass in that case, we noted that Urban Storage presented the
following: (1) affidavit testimony that the tenant information conveyed was not
known to any party outside of Urban Storage; (2) affidavit testimony that the
tenant information was not accessible to the general public; (3) documentary
evidence that Welch had been asked to sign a confidentiality agreement as a
condition of employment with Urban Storage; and (4) documentary evidence and
affidavit testimony that Urban Storage had made efforts to keep the information
secret.  Id.  Because this evidence supported four of the six factors,
we held that Urban Storage had produced more than a scintilla of evidence to
create a genuine issue of material fact as to whether  the information conveyed
was a trade secret.  Id.  at *6.  By contrast, in the present case, as
previously discussed, the summary-judgment evidence supports, at best, only one
element_that the information was valuable to
Bluebonnet.  While Urban Storage successfully produced evidence sufficient to
qualify as more than a scintilla, Bluebonnet has failed to do so.








Not only has Bluebonnet failed to
meet its burden of proving that this information should be considered a trade
secret or confidential information, it has also not proven that Kolkhorst acted
improperly in obtaining the information.  Kolkhorst=s chief executive testified that: he
did not ask Robinson about the identity of the accounts he was working on at
Bluebonnet; he did not ask for material or files from Bluebonnet; and, he never
asked or encouraged Robinson to solicit the customers of Bluebonnet for
Kolkhorst.  Further, the summary-judgment evidence presents no basis for
concluding that Robinson shared any information with Kolkhorst beyond the names
of potential accounts.  Robinson testified in his deposition that he did not
deliver to Kolkhorst any materials, studies, reports, or other information
regarding Bluebonnet=s accounts.  Rather, he returned such files to Bluebonnet
upon the termination of their business relationship. Although Kathy Smith=s affidavit refers to phone calls
made between Robinson and Kolkhorst on the day of the meeting with Circle G, we
see no evidence about the content of the phone calls or that such phone calls
were improper behavior on the part of Kolkhorst.  Therefore, the trial court
did not err in granting summary judgment in favor of Kolkhorst for the
theft-of-trade-secrets-and-confidential-information claim.         

b.         Inducement
to breach fiduciary duty

Regarding the
inducement-to-breach-fiduciary-duty claim, Bluebonnet correctly states that Awhere a third party knowingly
participates in the breach of duty of a fiduciary, such third party becomes a
joint tortfeasor with the fiduciary and is liable as such.@  Baty v. ProTech Ins. Agency,
63 S.W.3d 841, 864 (Tex. App._Houston [14th Dist.] 2001, pet. denied) (citations omitted). 
However, Baty also provides that A[t]his rule . . . does not apply
where the third party is doing that which he has a legal right to do.@  Id. 

The summary-judgment evidence does
not show that Kolkhorst was doing anything other than what it was legally
entitled to do.  Kolkhorst had a right to place phone calls to and receive
phone calls from Robinson.  Kolkhorst had a right to contact Circle G, in
response to Circle G=s request.  Kolkhorst subsequently made a presentation to
Circle G, also at Circle G=s request.  Robinson was not involved in this presentation. 
Bluebonnet also made a presentation to Circle G after Robinson=s departure, but Circle G chose to
contract with Kolkhorst.  Even if Robinson owed and breached a fiduciary duty
to Bluebonnet, Bluebonnet has presented no evidence that Kolkhorst encouraged,
induced, or participated in any such breach.








In its motion for rehearing,
Bluebonnet again asserts that this Court inconsistently applied the relevant
standard on this issue in our prior opinion.  In SP Midtown, this Court
held that evidence showing SP Midtown had faxed vacancy reports from its storage
facilities to Welch_while she was still employed by Urban Storage, and about the same time
that Welch was faxing trade secrets to Midtown_could create a reasonable inference
that Midtown was attempting to elicit Urban Storage=s trade secrets.  Id.  at *6. 
Bluebonnet=s reliance upon SP Midtown in this regard is misplaced for two
reasons.  First, the relevant summary-judgment evidence in SP Midtown revealed
the content of the communications by both parties to the alleged
misappropriation.  Summary-judgment evidence demonstrated that SP Midtown was
faxing vacancy reports to Welch, who in turn faxed daily rental logs containing
detailed tenant information to SP Midtown.  Id.  at *6.  Based on this
evidence, we held that it was a reasonable inference that SP Midtown was
eliciting Welch to send them customer information.  Id.  Further
evidence demonstrated that SP Midtown=s vacancy reports could help Welch
determine Awhether SP Midtown could accommodate the needs of [Urban Storage=s] current and prospective customers,@ as well as allowing SP Midtown to
directly market to Urban Storage=s tenants.  Id.  

In the present case, Bluebonnet
presented evidence that Robinson had knowledge about Circle G; that Robinson
told Kolkhorst about Circle G=s interest in Kolkhorst; that Robinson and Kolkhorst
exchanged phone calls; and, that Kolhorst made a presentation to Circle G which
resulted in a contract for Circle G=s business.  Any possible inference
that Kolkhorst elicited Robinson for information about Circle G is overcome by
the undisputed fact that Circle G specifically requested contact by, and a
proposal from, Kolkhorst.  Second, and perhaps more importantly, any such
inducement of Robinson would be actionable only if related to the transfer of
trade secrets or confidential information, which, as stated previously, is not
supported by the evidence in this case. 

The trial court did not err in
granting summary judgment on this issue for Kolkhorst.

c.         Tortious
interference with prospective business relations

This court has previously outlined
the apparent requirements to succeed on a claim for tortious interference with
a prospective business relationship: 








(1) a reasonable probability that the plaintiff would
have entered into a business relationship; 

(2) an independently tortious or unlawful act by the
defendant that prevented the relationship from occurring; 

(3) the defendant did such act with a conscious desire
to prevent the relationship from occurring or the defendant knew the
interference was certain or substantially certain to occur as a result of the
conduct; and 

(4) the plaintiff suffered actual harm or damages as a
result of the defendant=s interference.  

Baty, 63 S.W.3d 841 at 860. 

To
satisfy the second requirement, Bluebonnet must prove that it was harmed by
Kolkhorst and that Kolkhorst=s conduct Awas either independently tortious or unlawful.@  Wal-Mart Stores, Inc. v. Sturges,
52 S.W.3d 711, 713 (Tex. 2001).  Bluebonnet alleges that Kolkhorst hired
Robinson away from Bluebonnet to deliver customers to Kolkhorst, and that
Kolkhorst acted Ain cooperation with@ and Aconspired with@ Robinson to participate in his
breach of fiduciary duty.  Specifically, Bluebonnet claims that AKolkhorst=s illegal or unethical or immoral use
of a corporate fiduciary to convert confidential business information of a
competitor that it would not otherwise have possessed and its own actions in
acquiring the customer satisfy the independently tortious element.@  

There is
no evidence that Kolkhorst acted illegally or that the behavior of Kolkhorst
qualifies as independently tortious.  We see no evidence that Kolkhorst
solicited confidential information from Robinson, or encouraged Robinson to
solicit customers of Bluebonnet for Kolkhorst.  Although Robinson told Circle G
that he would be unable to handle the account should they sign a contract with
Bluebonnet, no evidence is presented that such action was tortious or that
Kolkhorst encouraged or solicited it.  As discussed above, there is no evidence
that Robinson shared confidential information such as feasibility studies,
personal notes and drawings, or any other information from his Bluebonnet files
with Kolkhorst.  Rather, Robinson asserts, and Bluebonnet does not contest,
that he returned such documents to Bluebonnet upon termination of his
employment.  








Bluebonnet also alleges that
Kolkhorst acted with Robinson to usurp a corporate business opportunity.  But
both Kolkhorst and Bluebonnet made subsequent presentations to Circle G,
without any involvement by Robinson.  Following those presentations, Circle G
chose to contract with Kolkhorst.  The business opportunity was not usurped. 
Instead, each company was given a fair opportunity to persuade Circle G to
contract with it; Kolkhorst just happens to have prevailed.  

Bluebonnet makes no other accusations
of tortious or unlawful activity by Kolkhorst.  Therefore, Bluebonnet has not
presented evidence of an essential element necessary to support the claim.  The
trial court did not err in granting summary judgment for Kolkhorst on the claim
for tortious interference with prospective contract relations.  See Tex. 
R.  Civ. P.  166a(i).

d.         Civil
conspiracy

To establish civil conspiracy,
Bluebonnet must show that Robinson and Kolkhorst had a meeting of the minds on
an object or course of action, and that one of the members committed an
unlawful, overt act in furtherance of the object or course of action.  Chon
Tri v. J.T.T., 162 S.W.3d 552, 556 (Tex. 2005).  As evidence of the
alleged conspiracy, Bluebonnet points to phone calls between Robinson and
Kolkhorst and the fact that Kolkhorst eventually signed a contract with Circle
G.  But this amounts to no evidence of either a meeting of the minds or of any unlawful
act by either Robinson or Kolkhorst.  Although proof of a civil conspiracy may
be, and usually must be, made by circumstantial evidence, vital facts may not
be proved by unreasonable inferences from other facts and circumstances. Schlumberger
Well Surveying Corp. v. Nortex Oil & Gas Corp., 435 S.W.2d 854, 858
(Tex. 1968); SP Midtown, Ltd., 2008 WL 1991747, at *9.  In its motion
for rehearing Bluebonnet argues that the evidence of phone calls between
Robinson and Kolkhorst qualifies as sufficient circumstantial evidence to
establish a civil conspiracy.  But Bluebonet offers no evidence of the content
of these phone calls.  Consequently, the application of such evidence relies
upon speculation rather than reasonable inference.  The trial court did not err
in granting summary judgment on Bluebonnet=s civil conspiracy claim.








In conclusion, summary judgment was
proper as to Bluebonnet=s claims against Kolkhorst for theft of trade secrets or
confidential information, inducement to breach of fiduciary duty, tortious
interference with prospective business relations, and conspiracy.  

B.        Bluebonnet=s Motion for Partial Summary Judgment

In its cross-motion for partial
summary judgment, Bluebonnet contended that as a matter of law (1) Ray Robinson
was an employee and officer of Bluebonnet and owed Bluebonnet a fiduciary duty,
and (2) Kolkhorst knowingly acted in combination with Ray Robinson and received
the benefits of his breach of fiduciary duty to Bluebonnet by contracting with
Circle G.  

1.                 
Robinson=s
Status as an Employee and Officer

Bluebonnet
alleges that the trial court erred in denying its motion for partial summary
judgment because the evidence established as a matter of law that Robinson was
an employee and officer of Bluebonnet.  Although Bluebonnet presented
summary-judgment evidence that Robinson was a corporate officer, Robinson and
Kolkhorst submitted conflicting evidence sufficient to raise a fact issue.  In
his affidavit, Robinson attests that he never served or agreed to serve as a
corporate officer of Bluebonnet.  Further, he asserts that Bluebonnet=s bylaws contain no
reference to a Avice
president of marketing,@
the position Bluebonnet contends he held.  Robinson also alleges that he never attended
nor was invited to attend any shareholders=
or directors=
meetings.  Robinson=s
business cards refer to him as AMarketing
Manager@ and not as a
vice president. Pay stubs referring to his compensation as Aconsult@ support Robinson=s contention that he was a
consultant, and at least one tax filing submitted by Bluebonnet does not list
Robinson as an officer.  Taking as true, as we must,  all evidence favorable to
Kolkhorst, a demonstrated question of fact remains as to Robinson=s status as an employee and
officer of Bluebonnet.  Therefore, we conclude that this evidence is sufficient
to preclude summary judgment.  See Sudan, 199 S.W.3d at 292.  

2.                 
Kolkhorst=s
Benefit from Robinson=s
Breach of Fiduciary Duty








Regarding
the second issue, Bluebonnet alleges that the trial court erred in denying its
motion for partial summary judgment because Bluebonnet established as a matter
of law that, by contracting with Circle G, Kolkhorst knowingly acted in
combination with Robinson and received the benefit of his fiduciary breach.  We
disagree.  As discussed previously, there was no evidence that the information
Kolkhorst obtained from Robinson qualified as a trade secret; that Kolkhorst
induced Robinson to breach a fiduciary duty; that Kolkhorst tortiously
interfered with Bluebonnet=s
prospective contract relations; or that Kolkhorst conspired with Robinson. 
Stated more simply, because Bluebonnet has not established any breach of
fiduciary duty as a matter of law, it cannot demonstrate that Kolkhorst has
enjoyed the benefits of such a breach as a matter of law.  Because Bluebonnet
has failed to establish its claim as a matter of law, the trial court properly
denied Bluebonnet=s
motion for partial summary judgment.  See Tex. R. Civ. P. 166a(c).

For
the foregoing reasons, we affirm the judgment of the trial court.

 

 

 

/s/         Jeff
Brown

Justice

 

 

Judgment
rendered and Substitute Memorandum Opinion on Rehearing filed October 9, 2008.

Panel
consists of Chief Justice Hedges, and Justices Brown and Boyce.